MEDORA W. LENOW v. BANK OF COMMERCE & TRUST CO., Executor.

Western Section.    February 4, 1927.

No petition for Certiorari was filed.

1. **Evidence. Admissions by attorneys. Admissions made by an attorney at the trial of a case is not binding on his client in a second trial of the case.**
   In an action involving the title to a bond where the attorney for the defendant at the first trial of the case admitted that the bond had been given to complainant, and upon a mistrial and a second trial of the case the gift was denied, held that the admission of the attorney was not binding on the client at the second trial and the question of whether the gift had been completed or not might be urged.

2. **Gifts. Delivery and acceptance actual or constructive is necessary to complete the gift.**
   The mere declaration by the alleged donor that she had given a bond to her daughter without any proof of actual or constructive delivery would not operate to vest title in the donee.

3. **Gifts. The placing of a bond by the donor in a lock box to which the donee had access together with statements of the donor, held to constitute a completed gift.**
   In an action involving the right to a certain bond which the complainant claimed had been given to her by her mother where the evidence showed that complainant's mother bought three bonds to give her children and that the other two were delivered and that the one in question was placed in a lock box to which complainant and her mother both had keys, and that thereafter the mother clipped the coupons and sent the money to the complainant, held to constitute a completed gift.

4. **Gifts.   Where a gift is completed by constructive delivery the fact that the donor later repossessed the property given does not destroy the gift.**

Where the mother gave her daughter a bond and placed it in a lock box to which they both had access and thereafter clipped the coupons and sent her the money but before her death, removed the bond to a lock box of her own, held that the gift having been completed by constructive delivery in placing the bond in the daughter's lock box, the gift could not later be destroyed by the mother again taking possession of the bond.

5. **Gifts.   Evidence.   Evidence to sustain a gift inter vivos must be clear, cogent and convincing.**

It is a well settled rule in Tennessee that in order to sustain a gift inter vivos the evidence must be clear, cogent and convincing. This is more than a mere preponderance of the evidence.

6. **Gifts.   Evidence.   Evidence held to show that bonds were given to daughter as a loan and not as an absolute gift.**

In an action to ascertain the title to certain bonds where complainant contended that the bonds had been given to her by her mother, the evidence examined and held to show that the bonds were delivered to the daughter as a loan and not as a gift.

Appeal from Chancery Court, Shelby County; Hon. Wightman Hughes, Chancellor.

Harsh & Harsh, of Memphis, for appellant.

Randolph & Randolph, of Memphis, for appellee.

SENTER, J.   Mrs. Jessie H. Peters, mother of complainant, died testate in the city of Memphis, Tenn., on the 15th day of July, 1921. The defendant Bank of Commerce & Trust Company, named in the will as executor, by the provisions of the will was directed to invest the personal property and collect the income therefrom and to rent out the real estate during the joint lives of the three children of the testatrix, i. e., Mrs. Medora W. Lenow, R. L. Peters, and Mrs. Kate Holden, and to divide the net income therefrom between the three equally. The executor and trustee, the Bank of Commerce & Trust Company, after qualifying, took charge of the estate and proceeded to collect the revenues therefrom as directed by the terms of the will.

The original bill was filed in this cause by Mrs. Medora W. Lenow and her voluntary assignee, C. W. Salter, against the Bank of Commerce & Trust Company, alleging that the defendant as the executor and trustee under the will of Mrs. Peters then had in its hands the sum of $2435.10, representing the one-third share of Medora W. Lenow of the revenues collected and held by defendant and belonging to said complainant, and that said executor had declined to pay this amount to Mrs. Lenow or to her voluntary assignee C. W. Salter, and prayed for a decree for said sum. The bill also sought to recover from the defendant a certain bond of the par value of $1,000, described as "Crittenden County Road Improvement District No. 7 Bond, No. 375," alleging in the bill that

said bond belonged to the complainant Mrs. Medora W. Lenow, and that said bond had been given to said complainant by her deceased mother.

The defendant filed an answer to the original bill admitting that it had in its hands as the share of complainant derived from the revenues from said estate the said sum of $2435.10, and also the said Crittendon County Improvement District Bond, but denied that said bond belonged to complainant.

The defendant filed the answer as a cross-bill, alleging by way of cross-bill that, the complainant had received from the deceased seven certain bonds of the par value of $1,000 each, six of which were the bonds of the Memphis Street Railway Company, and one bond of the Birmingham Railway Light & Power Company, giving the respective numbers of each of the seven bonds, and alleging that said bonds had been loaned by the testatrix to her daughter, complainant Mrs. Medora W. Lenow, for the purpose of enabling the complainant to borrow money, and with the agreement and understanding that the said bonds or the value thereof would be returned to its testate, and that at the time of the death of said Mrs. Jessie H. Peters the complainant had not returned the said $7,000 of bonds, and that after the death of its testate, and the qualification of defendant as executor, it·called upon complainant to turn over said seven bonds to it, which the complainant declined to do. The answer· by way of cross-bill seeks to recover the said seven bonds or the value thereof from Mrs. Medora Lenow.

The cross-defendants, Medora W. Lenow and C. W. Salter, answered the cross-bill, and denied that the said seven bonds set out and described in the cross-bill were loaned to complainant Mrs. Lenow, but that the said Mrs. Jessie H. Peters gave said bonds to Mrs. Lenow, and that she was the rightful owner of said bonds.

When the cause was prepared for trial, it was tried before Chancellor Peres, and Chancellor Peres was of the opinion that the seven bonds referred to in the cross-bill were loaned to Mrs. Lenow, and that Mrs. Lenow was not the owner of the bonds. During the trial of the case before Chancellor Peres the solicitor for the defendant Bank of Commercee & Trust Company admitted that the $1,000 Crittenden County Improvement Bonds, under the evidence was a gift by Mrs. Peters to her daughter, Mrs. Lenow. Before the decree was prepared and entered, Chancellor Peres died. After the death of Chancellor Peres, and after the appointment of Chancellor Hughes to succeed Chancellor Peres, the Bank of Commerce & Trust Company made a motion·in the cause before Chancellor Hughes for a nunc pro tunc decree based upon the findings of Chancellor Peres. This motion was overruled and disallowed, and the cause was then tried on the same record before Chancellor

Hughes. At the hearing of the cause before Chancellor Hughes, the solicitor for the defendant then contended that the $1,000 Crittenden County Improvement District Bond was not a completed gift to Mrs. Lenow, and that said bond, did not, therefore, belong to Mrs. Lenow, and that she was not entitled to the same. This trial of the case resulted in a finding by the Chancellor that the seven bonds referred to in the cross-bill were not a gift to Mrs. Lenow, but that said seven bonds were loaned to her by Mrs. Jessie H. Peters to be returned or to be accounted for. The Chancellor also held that the $1,000 Crittenden County Improvement Bond referred to in the pleadings, was not a completed gift to Mrs. Lenow, and that she was not entitled to recover the same. Under these findings by the Chancellor it was decreed that Mrs. Lenow should account for the value of the seven bonds referred to in the cross-bill, and that the value of said bonds when ascertained, upon a reference to the Master, should be charged to her interest in the estate or the earnings, and the amount already in the hands of the executor representing her one-third part of the earnings or revenues from the estate would be applied to the value of said bonds.

From this decree of the Chancellor original complainants and cross-defendants have appealed to this court, assigning numerous errors. The several assignments of error are grouped into two groups, and present the two questions of law and fact involved on this appeal. By one group of the assignments of error it is contended that the learned Chancellor was in error in holding that the $1,000 Crittenden County Improvement Bond was not a completed gift to Mrs. Lenow. By the other assignments of error it is contended that the learned Chancellor was in error in holding that the seven bonds delivered to Mrs. Lenow through her son was a loan of said bonds and not a gift. Hence we have but the two questions of mixed law and fact to consider on this appeal. We will first consider and dispose of the assignments of error with reference to the $1,000 Crittenden County Improvement Bond. With reference to this bond there is but little if any conflict in the evidence. It seems to be conceded that Mrs. Jessie H. Peters purchased three of the Crittenden County Improvement District No. 7 Bonds, and at the time of the purchase, and subsequent thereto, she stated that she had purchased the three bonds to be given by her to her three children. One to her daughter, Mrs. Kate Holden, and one for the children of her son, Robert L. Peters, and one for her daughter, Mrs. Medora Lenow; that she gave to her daughter, Mrs. Kate Holden, one of these bonds; and turned over to Mrs. Robert L. Peters the bond intended for the children of her son, Robert L. Peters. It also appears that at that time she had a lock box in the vault of the State Savings Bank in Memphis, and that both Mrs.

Peters and Mrs. Lenow had a key to that box, and that she put the third bond in the box at the State, Savings Bank for Mrs. Lenow. It also appears that this box in the vault of the State Savings Bank was the joint box of Mrs. Jessie H. Peters and Mrs. Lenow, and that both of them had keys to the box. It does not appear that Mrs. Lenow ever took possession of this bond, but it is clear from the record that Mrs. Jessie H. Peters clipped the interest coupons regularly, and collected the interest on the interest coupons, and sent the money by check to Mrs. Lenow, who then lived in Mississippi. It also appears that Mrs. Jessie H. Peters also had a lock box in the vault of the Bank of Commerce & Trust Company, in Memphis, to which she alone had the key, and that shortly before her death she took the bond in question together with other of her valuable papers and bonds from the box in the State Savings Bank and placed them in the box at the Bank of Commerce & Trust Company, where said bond was found after the death of Mrs. Jessie H. Peters. There is no evidence in the record that Mrs. Jessie H. Peters ever delivered the bond in question, by an actual delivery to her daughter, Mrs. Lenow, although she stated to different persons that she bought the bond for Mrs. Lenow, and placed it in the joint box at the State Savings Bank for Mrs. Lenow. The question presented under these facts is whether there was either actual or constructive delivery and acceptance of this particular bond so as to constitute a vesting of the title in the bond in Mrs. Lenow. Among other contentions made for Mrs. Lenow on this appeal is that counsel for the defendant bank at the first trial of the case before Chancellor Peres conceded or admitted that under the evidence it constituted a gift, and that this admission made by counsel for the bank at the trial of the case was binding upon the bank, and that the bank is estopped because of said admission by counsel from subsequently claiming the bond. In support of this contention we are referred to Jones on Evidence, Section 257; Oscanyan v. Arms Co., 103 U. S., 539; Pratt v. Conyon, 148 Mo. 291, 71 Am. St. Rep., 602, and other cases. The section 257 of Jones on Evidence, under the sub-title of "Admissions by Attorneys" is as follows:

"In the conduct of litigation it is frequently to the advantage of the parties for their attorneys to make stipulations as to questions of fact or dispensing with proof of certain facts. Attorneys are deemed the agents of their clients for the purpose of making such admissions in all matters relating to the progress and trial of the action. . . . When admissions of this character are formally made for the purpose of waiving certain proofs or rules of practice, they are conclusive upon the client and cannot be withdrawn."

In the case of Oscanyan v. Winchester Arms Co., supra, a statement of the facts was made for the complainant by his attorney, and according to the statement of the facts as made by the attorney at the beginning of the case, it appeared that because of the official position held by Oscanyan as an officer of the Turkish government, that the contract sued upon was void and non-enforceable as being corrupt in itself and contrary to public policy, and that upon the facts as stated by the attorney no recovery could be had.

In the case of Pratt v. Conway, 148 Mo., 291, supra, is presented another case in which the statement of the facts by counsel, if true, would preclude a recovery by their client and was held by the court in that case that under the facts as stated by counsel the plaintiff could not recover.

In all these cases, as well as in other cases examined on the subject, it appears that these were but admissions of fact, and where the facts were admitted, and there remains but the question of law under the facts as stated, and taking the fact as stated by counsel to be true, as a matter of law a recovery could not be had. In the instant case we have the attorney for the bank conceding that under the law as applied to the facts, that the gift inter vivos had been made, and the gift was complete. That concession was made at a former trial of the case. At the subsequent trial of the case the same attorney, after an investigation of the question, reached the conclusion that he was mistaken and that as a matter of law the gift had not been completed, in that there had not been delivery and acceptance of the bond. We do not think that the assignment of error based upon the alleged admission of the attorney for the bank is well taken.

We are of the opinion that if the attorney for the defendant made an admission as to the legal effect of the transaction with reference to the gift of the bond in question, and at the subsequent trial he reached the conclusion that the admission so made was erroneous, it would not operate to estop the defendant bank at a subsequent trial from claiming the bond in question, or from insisting that the gift had not been complete.

We now come to the question as to whether, under all the facts and circumstances, there had been delivery, actual or constructive, of this bond to Mrs. Lenow. There is but little conflict, if any, in the evidence. It is clear that Mrs. Jessie H. Peters, at the time she purchased the three Crittenden County Improvement Bonds, expressed the intention of giving one of these bonds to her daughter, Mrs. Lenow, and one to the children of her son, and one to her daughter, Mrs. Kate Holden. She delivered one of the bonds to Mrs. Holden, and delivered one of the bonds to Mrs. Peters, her daughter-in-law, for the two children of her son. The bond in

question she placed in a lock box in the State Savings Bank, which box was the joint box of Mrs. Peters and Mrs. Lenow, and both of them had a key to the box, and both had access at all times to the box. Mrs. Lenow lived in Mississippi on a farm. After placing the bond in question in the lock box she wrote Mrs. Lenow that she had given her this bond and had placed it in the lock box for her. This letter was not produced, but it was shown by the deposition of Mr. John Martin, a reputable attorney of Memphis, that the letter had been turned over to him and that he had lost or misplaced it. There is no conflict in the evidence with reference to this letter having been written by Mrs. Jessie H. Peters to her daughter, and the substance of the letter was proven. Mrs. Jessie H. Peters, the alleged donor, and who lived in Memphis clipped the interest coupons from this bond, collected the interest at regular periods, and remitted the amount to her daughter. Mrs. Lenow never had the actual physical possession of this bond, but it was placed in the joint lock box of the two, and she had access to it at all times, and knew that it was there for her. We think that these facts constituted a gift of the bond to Mrs. Lenow, and that the delivery of the same was made and accepted. Under the facts as above stated we think the bond in question became the property of Mrs. Lenow, and the fact that after the gift had been made and completed, Mrs. Jessie H. Peters, the donor, who also had joint access to the lock box in which it was placed, in clipping the interest coupons and collecting the interest and remitting the interest regularly to Mrs. Lenow, was acting as the agent of Mrs. Lenow. We are also of the opinion that the fact that Mrs. Jessie H. Peters, shortly before her death, removed this bond, together with other bonds and valuable papers, and placed them in a lock box in the Bank of Commerce, would not operate to revoke a gift previously made. Nor would it be a fact or circumstance tending to show that the gift had not been made complete by delivery. It is true that the fact that both the donor and the donee had access to the same box as the joint owners of the box, gave to the donor an opportunity, after the gift was made to take possession of the bond. However, we are of the opinion that the gift having been made complete, and that there had been constructive delivery and acceptance, that any subsequent acts by Mrs. Peters could not operate as a revocation of the gift.

While a mere declaration by the alleged donor that she had given the bond to her daughter, without any proof of actual or constructive delivery, would not operate to vest title in the donee, and that delivery and acceptance, actual or constructive, is necessary to complete the gift. Wilson v. Wilson, 151 Tenn., 486. Under head note 5 of the case cited it is said: "Delivery is necessary .

to perfect gifts inter vivos, as well as gifts causa mortis, and the rules governing delivery are substantially the same in either case."

In Scott v. Bank, 123 Tenn., 258, cited and approved in Wilson v. Wilson, supra, it is said:

"An examination of the modern cases all show while courts will scrutinize with care the evidence upon which gifts causa mortis are sought to be sustained, and will require in every case convincing proof, yet, when it is once ascertained that it is the intention of the donor to make such a gift, and all is done which is possible under the circumstances in the matter of delivery, the gift will be sustained."

In the case of Royston v. McCulley (Tenn. Ch. App.), 59 S. W., 775, 52 L. R. A., 899, it appeared that a note was endorsed by the donor to a young woman living in his house, and a declaration made by the donor of his intention to give to her the note, and he then put the note away among her own private papers in his own house. It was held by the court that his subsequent possession on his part was as agent of the donee, and that by his previous act of endorsing the note to the donee, and his declaration of his intention to give her the note, operated as a delivery and acceptance, and completed the gift. It did not appear in that case that there was actual physical delivery, nor was it held necessary.

We are of the opinion that Mrs. Peters made a gift of this bond to complainant Mrs. Lenow, and that her declaration of intention to make the gift, her letter to Mrs. Lenow that she had made the gift, and her act of placing the bond in the lock box to which they both had access, and with notice to the complainant Mrs. Lenow that the bond had been placed in the lock box in the bank to which Mrs. Lenow had access, and a key to the box, was sufficient to complete the gift. We are of the opinion that the learned Chancellor was in error in holding that the gift was not complete, and in holding that Mrs. Lenow was not the owner of the bond in question. The assignments of error on this question are sustained.

We come now to consider the second question made the subject of the other assignments of error, to the effect that the Chancellor was in error in holding that the seven bonds referred to and described in the cross-bill, were loaned cross-defendant, Mrs. Medora Lenow, and not given to her.

There is considerable conflict in the evidence, and the matter resolves itself more into a question of fact than one of law. This necessitates a summary of the evidence offered by the respective parties.

Mrs. Jessie H. Peters was a widow about 84 years of age at the time of her death. She had three children, two daughters Mrs. Kate Holden, who lived in the home with her, and Mrs. Medora

Lenow, who lived on a farm in Mississippi, and one son, Robert L. Peters, who lived on a farm in Arkansas. The value of the estate of Mrs. Peters at the time of her death is not definitely shown by the record, but it appears that she was the owner of a plantation in Arkansas and owned a considerable amount of bonds, the home-place in Memphis, and perhaps other property. Mrs. Holden had been married and divorced, and for a period of about twenty-five years had lived in the home with her mother. Robert L. Peters was married and had two children. For many years this son lived on and operated the plantation of his mother in Arkansas. Mrs. Medora Lenow, the other daughter, was the mother of a large family of children, and was evidently in very straitened circumstances. Mrs. Peters seemed to have helped all of her children from time to time in a financial way.

It appears from the record that Mrs. Lenow at the time she obtained the bonds in question from her mother was in serious financial stress, and was about to lose her farm in Mississippi on which she lived, and which was encumbered. In this situation she wrote a letter to her mother requesting a loan to relieve her financial distress; and that she had her son, Henry Lenow, to go to Memphis in company with her son-in-law, H. H. Hanson, to take the matter up with her mother of obtaining the loan of money or bonds. Her son, Henry, and son-in-law, Hanson, went to the home of Mrs. Peters in Memphis, and after discussing the matter with Mrs. Peters she agreed to loan bonds sufficient to meet the immediate needs of her daughter, Mrs. Lenow, and in company with Henry Lenow and H. H. Hanson, Mrs. Peters went to the State Savings Bank vault room, and the seven bonds in question were taken from the lock box and delivered to Henry Lenow. Up to this point there is no material conflict in the evidence. Henry Lenow and H. H. Hanson both testified that when they got to the bank and Mrs. Peters took the bonds in question out of her lock box and turned them over to Henry, she then told him that she was making a gift of the bonds to her daughter, Mrs. Lenow; that she knew of the needs of her said daughter, and that she had not done as much for her as she had for the other children, but requested Henry and Hanson not to say anything about the bonds being a gift, because it would occasion unpleasantness from Mrs. Holden, her daughter who lived with her. They both testify that Mrs. Peters wanted a list of the bonds that she turned over to Henry and when they returned to the hotel, and on the same day, he wrote the following note:

"December 31, 1920.

"Mrs. J. H. Peters,
"Memphis, Tenn.
"Dear Gran:
"I want to thank you for helping us out with the bonds you gave me today to be used as collateral on our debts, etc. The numbers of the bonds are as follows: No. 9103 Birmingham Ry. Light & Power Co.; Nos. 8069-7103-467-7067-7104 and 6516, all of Memphis Street Ry. Co.

"Wishing you good health, happiness and prosperity, and that we will be more prosperous in the New Year and thanking you again for your favor and kindness to us, I am,

"Your grandson,
"Henry."

He testified that in writing the above note to his grandmother, giving her the list of the bonds, he purposely worded the letter so that his Aunt Kate Holden, who he thought might get hold of the letter, would not understand that it was a gift and not a loan of the bonds to his mother. He then states that he remained in Memphis about ten days after he procured the bonds before returning to his home in Mississippi, but that he promptly wrote his mother that the matter had been satisfactorily arranged, but did not inform her in the letter that the bonds had been given to her, as he intended to explain in detail when he got home. He further states that when he reached home about ten days later, and before he could tell his mother that the bonds had been given to her and not merely loaned, his mother met him at the door and said to him, "Why, Henry, Gran gave me the bonds," and he asked her how she knew that it was a gift and she then explained that she had received a letter from her mother telling her that she had made a present to her of the bonds.

It also appears that upon the receipt of the letter from her son, Henry, informing her that he had obtained the bonds and that the matter had been satisfactorily arranged, that Mrs. Lenow wrote her mother a letter thanking her for the loan of the bonds and assuring her that the bonds would be returned. This letter is contained in the record. Mrs. Lenow also stated in said letter to her mother that she had not seen Henry. Mrs. Lenow explains that she wrote this letter to her mother before her son, Henry, returned home, and that at the time the letter was written she did not know that the bonds had been given to her, but thought that the bonds had been loaned in response to her request. Mrs. Lenow testified that in reply to her letter thanking her mother for the loan of the bonds that her mother then wrote her a letter in which she stated that she had given her the bonds, had made her a

present of the bonds, but requested that she not let her other daughter, Mrs. Holden, know of the gift, as it would cause trouble and unpleasantness in the home. This letter, is alleged to have been lost or misplaced, and could not be produced, and upon proof of the fact that the letter had been lost or misplaced, the Chancellor admitted evidence of its contents. Three of the children, all married, of Mrs. Lenow, testified that they had seen and read this letter, and they all testified in substance as to the contents of the letter with reference to the bonds having been given to Mrs. Lenow. H. H. Hanson, the son-in-law of Mrs. Lenow, also testified that he saw the letter and read it at his home. He testified on that subject that Mrs. Lenow, the mother of his wife, sent the letter to his wife and that it was the custom among the family to send the letters from one member of the family to another, as the family was large, and in this way the different members of the family could better keep informed as to the happenings in the family. Another son of Mrs. Lenow testified that he was living in Memphis and at the home of his grandmother, Mrs. Jessie H. Peters, at the time these bonds were procured by his brother Henry, and that he then understood that the bonds had been loaned to his mother. He states that shortly after Henry obtained the bonds, he is not definite as to the time, but thought it was two or three weeks after Henry had obtained the bonds, that his grandmother, Mrs. Peters, told him that she was writing his mother that the bonds she wanted to borrow she was giving to her. He did not claim to have seen this letter, but stated that his grandmother handed him the letter to mail, and at the time told him that the letter was giving the bonds to his mother. Another daughter of Mrs. Lenow, who was also living in Memphis at the time, and spend a part of her time in the home of her grandmother, Mrs. Peters, testified that some months prior to her grandmother's death that her grandmother told her that she had given these bonds to her mother, but cautioned her not to say anything about it because of the trouble it would occasion in the home from Mrs. Holden. All of these witnesses testified that Mrs. Holden made it very unpleasant for Mrs. Peters and was constantly nagging her because of any favors or gifts that she bestowed upon Mrs. Lenow, and that Mrs. Peters was very careful to conceal from Mrs. Holden any gifts that she had made to Mrs. Lenow. This is a summary of the evidence offered in support of the contention of Mrs. Lenow that the bonds in question were a gift to her by her mother.

The contention of the bank and that of Robert L. Peters and Mrs. Kate Holden, that these bonds were simply loaned to Mrs. Lenow with the agreement and understanding that they would be returned or accounted for and were not given to Mrs. Lenow,

is supported by the following facts: The letter written by Mrs. Lenow seeking to obtain the loan of the bonds, followed by the visit of Henry Lenow and H. H. Hanson to the home of Mrs. Peters when the request was personally made for the loan of the bonds. The note written by Henry Lenow to his grandmother, Mrs. Peters, thanking her for the bonds, hereinbefore quoted, and which note or letter was placed by Mrs. Peters in her private lock box in the Bank of Commerce & Trust Co., where it was found among other valuable papers after her death. An entry in the diary of Mrs. Peters, and in the handwriting of Mrs. Peters with reference to the bonds, as follows: "I went to bank today with Henry J. Lenow and H. H. Hanson and let them have some bonds until place is sold and then they return the bonds." This diary is sent up in its original form in the record, and is on a pencil tablet. The sheet on which the above entry is written had been torn, about half of the sheet containing some data as to weather condition, etc., and the above reference to the bonds had been torn from the balance of the sheet but had been pinned back to the sheet. This diary was kept by Mrs. Peters in her room on her dresser and in her dresser drawer, and was at all times exposed to Mrs. Holden. There is no question made but that the entry referred to was in the hand-writing of Mrs. Peters, and an inspection of the torn sheet shows that it was torn from the diary and perfectly fits the remaining portion of the sheet left in the diary. It is also contended for the bank, that on the night following the funeral of Mrs. Peters, Mrs. Lenow, who with other members of the family were at the Peters home in Memphis, admitted that the bonds in question had been loaned to her and that she agreed to account for the same, and let the value of the bonds be taken from her share in the estate of her deceased mother. This contention is sought to be proven by the evidence of Robert L. Peters, Mrs. Robert L. Peters, and Mrs. Kate Holden. There is some conflict in the testimony of these three witnesses as to the substance of the conversation between the parties on the night in question. Mrs. R. L. Peters states that Mrs. Lenow stated to her husband in the conversation, as follows:

"They were talking about, wondering if there was a will, or looking for a will and Dora says, Pete, you borrowed some money from Mama, and Pete says, Yes, but I am prepared to pay it back. She says well, I borrowed $7,000 and I will take it out of my share of the estate."

Robert L. Peters, in giving his version of the conversation with reference to the bonds on the night of the funeral states: "Why, Mrs. Lenow, we brought up the bond business and got to talking about it, and Mrs. Lenow said she would pay back the bonds,—I think it was $7,000 and $2,000, that was $9,000. Mrs. Lenow

thought as I did that there was no will and it would be straightened out in two or three days, and I think Dora was misled in some way thinking that Mama had willed her bonds to be divided between us and she would pay up.''

Mrs. Holden testified with reference to the conversation that night, and from her evidence it appears that they were engaged in a general discussion of the condition of their deceased mother's estate, and had examined a good many papers and documents, and that at some time during the conversation, she states that Mrs. Lenow ''kind of moved back in her chair and said: 'I don't owe but $5,000;' before that she had denied owing any at all. When we brought up proof so positive about then she admitted this $5,000.''

Mrs. Lenow denies that she made any admission or statement with reference to the $7,000 of bonds in question, or admitted that she owed the estate anything, but that the substance of her statements was to the effect that she simply said that if she owed the estate anything for borrowed money or loans that it could be paid out of her share in the estate.

We do not think that the evidence is sufficiently clear as to what occurred in the conversation between the parties to warrant a conclusion that Mrs. Lenow admitted that she had simply borrowed the bonds in question from her mother, or that it amounted to an actual admission that the bonds in question were but a loan.

With reference to the entry written in the diary by Mrs. Peters concerning the bonds in question, this entry flatly contradicts the evidence of Henry J. Lenow and H. H. Hanson as to what occurred at the bank at the time the bonds were delivered to Henry. The entry shows on its face that it was written by Mrs. Peters after she returned from the bank, and after the time Henry Lenow and H. H. Hanson testified that Mrs. Peters told Henry that the bonds were a gift to his mother. It is contended with much earnestness in the excellent brief for Mrs. Lenow, that this entry was made on the diary by Mrs. Peters for the purpose of misleading and deceiving Mrs. Holden as to the true nature of the transaction, and that the fact that the entry had been torn from the sheet in the diary on which it was written, and subsequently pinned back to the diary, is evidential of the contention that after the entry had been made by Mrs. Peters, and after it had served its purpose of misleading and deceiving Mrs. Holden into believing that the bonds were a loan and not a gift, that Mrs. Peters tore this entry from the sheet in the diary intending to destroy it, and that Mrs. Holden surreptitiously got possession of it, and secretly kept it until after the death of Mrs. Peters, when she pinned it back to the balance of the sheet in the diary from which it had been torn. In support of this theory the general conduct of Mrs. Holden, and her attitude

toward her mother, and the fact that she admitted that she obtained possession of the cancelled checks evidencing gifts or loans to Mrs. Lenow by her mother, by secret methods, and that the further admissions by Mrs. Holden that Mrs. Peters tried to keep secret from her other gifts and assistance given to Mrs. Lenow, supports the theory with reference to the entry on the diary having been made for the purpose of concealing the fact from her daughter, Mrs. Holden, that she had given these bonds to Mrs. Lenow. There is no evidence in the record that Mrs. Peters tore this entry from the diary. Mrs. Holden states that she may have torn it out herself, but does not state that she did so. There is no proof in the record as to who pinned the torn sheet back into the diary, nor is there any proof in the record as to when the torn sheet was pinned back into the diary. On these matters, and under the theory of appellants with reference to the diary entry, we are left largely to surmise and speculation. It is contended for appellants, that seven witnesses have testified that Mrs. Peters gave the bonds in question to Mrs. Lenow. As above set out, three of the daughters and the son-in-law, H. H. Hanson, of Mrs. Lenow, testified that they had seen and read the alleged letter, alleged to have been written by Mrs. Peters to Mrs. Lenow informing her that the bonds were a gift. This letter is not produced. It was certainly an important document, and one that would ordinarily have been preserved, and especially under the circumstances. Mrs. Lenow and her children admit that because of the request of Mrs. Peters that the gift be kept secret from Mrs. Holden, they sought to keep, and did keep the matter of the letter and the matter of the alleged gift from the knowledge of Mrs. Holden, knowing that she would make it unpleasant for Mrs. Peters if she knew that it was a gift. Mrs. Lenow must have known that upon the death of her mother, that Mrs. Holden would contend that the bonds had been loaned and not given to her. It therefore became especially material and important that she preserve the letter as it would have been incontrovertible evidence that the bonds had been given to her and not merely loaned to her. Where there is a conflict in the evidence, it is the duty of the court to try to reconcile the evidence so as to have all the witnesses speak the truth if it can reasonably be done. From the reading of the evidence of the witnesses who claim to have seen and read this letter, neither of them attempt to state the exact language which they construed to mean a gift of these bonds. They simply state that the letter in substance said that the bonds had been given to Mrs. Lenow, with the request that she not tell Mrs. Holden because it would result in unpleasantness in the home. Of course, the reason for the rule requiring the introduction of the letter itself, where it can be produced, is because it is the best evi-

dence of its contents, and because the court having the exact language before it may construe the letter according to its expressed meaning. Where the letter cannot be produced secondary evidence is permissible to prove the contents of the letter. But this secondary evidence should be considered with caution, and especially where the witnesses are unable to state the exact language, but are permitted to merely state the substance of the letter, which in many instances amounts to but the impression or interpretation that the witness gets from the language used in the letter. This alleged letter is claimed to have been written a few days after the bonds in question had been delivered to Henry Lenow. The witnesses who testify that they saw and read the letter gave their respective depositions in May, 1923. The letter must have been written about the first of January, 1921, hence, nearly two years and a half had elapsed from the time the witnesses read the letter and the time they testified as to its contents. We can readily reconcile their intention to speak the truth with reference to the contents of the letter, either on the matter of the fallibility of memory and also a mistaken interpretation given to the language used in the letter.

Unless we accept the theory of appellants with reference to the diary entry made by Mrs. Peters after she returned from the bank and after she delivered the bonds in question to Henry Lenow, we must conclude that this written entry made by Mrs. Peters in her diary flatly and effectually contradicts the evidence of Henry Lenow and H. H. Hanson. The intention of Mrs. Peters with reference to these bonds being a loan, and to be returned after a sale of the farm of Mrs. Lenow, is clearly and definitely expressed in the language of Mrs. Peters, the alleged donor. The fact that Mrs. Peters placed the letter or note written by Henry Lenow, which is in the nature of a receipt of the bonds in question, in her private lock box in the Bank of Commerce, and to which she alone had access and which note or receipt was found among her valuable papers in the lock box by the trust officer of the bank after the death of Mrs. Peters, is another significant fact and circumstance to be considered. The fact that Mrs. Peters was careful to preserve this note, which operated as a receipt for the bonds, is evidential that the bonds had been loaned and not given to Mrs. Lenow.

It is true that Arundel Lenow, another son of Mrs. Lenow, states that at the time Mrs. Peters gave him the sealed letter addressed to his mother to mail that she stated to him that the bonds were a gift. A careful reading of his evidence, when considered in the light of other facts and circumstances, reveals that his memory is vague and uncertain as to when this letter was given to him, and the exact words used by Mrs. Peters. She may have used words.

which this witness understood to mean that the bonds were a present, when it may have been that Mrs. Peters used the words given, in the sense that she had given the bonds as a loan to be temporarily used and returned. This may also be true of the evidence of the other daughter of Mrs. Lenow, Mrs. Guerin. Her evidence is also somewhat vague and indefinite, and especially with reference to the time of the alleged conversation.

We think it a well-settled rule, at least in this state, that in order to sustain a gift inter vivos, the evidence must be clear, cogent and convincing. This is more than a mere preponderance of the evidence. (Atchley v. Rimmer, 148 Tenn., 303, and cases therein cited and approved.)

We are of the opinion that appellants have failed in the contention that these bonds in question under the assignments of error now being considered were a gift and not a loan. We are of the opinion that the Chancellor was not in error in holding and decreeing that the seven bonds in question were a loan and not a gift, and all assignments of error based on the holding of the Chancellor as to these seven bonds, are overruled, and the decree of the Chancellor as to these seven bonds is affirmed. As to the Crittenden County Improvement District Bond, we are of the opinion that the Chancellor was in error in holding that that bond did not belong to Mrs. Medora Lenow, under a gift of the same to her by her mother, Mrs. Peters, and the decree of the Chancellor as to that bond is accordingly reversed. The cause is remanded to the Chancery Court of Shelby County for the carrying out of the decree of the Chancellor as modified by this opinion. The cost of this appeal will be divided, appellants and surety on the appeal bond will pay three-fourths of the cost of this appeal, and the defendant Bank of Commerce & Trust Company will pay one-fourth of the cost of this appeal, the same to be paid out of the estate of Mrs. Jessie H. Peters, that is, the one-fourth of the cost of the appeal adjudged against the defendant Bank of Commerce & Trust Company.

Owen and Heiskell, JJ., concur.