TENNESSEE CENTRAL RAILWAY COMPANY v. ROY W. ZEARING.

Middle Section. December 19, 1925.

Affirmed by Supreme Court April 10, 1926.

1. Appeal and error. Error in overruling a motion for peremptory instructions at close of plaintiff's evidence is waived by defendant's offering evidence.

Where defendant fails to stand upon its motion for peremptory instructions made at the close of the plaintiff's evidence in chief and proceeds to put on witnesses in its own behalf, it thereby waives its right to rely upon the motion.

2. **Appeal and error. A motion in general terms for directed verdict is sufficient.**

It is not necessary to set out specific grounds in a motion asking for a directed verdict, but a motion couched in general terms is sufficient on which to base an assignment of error that the trial court erred in declining to sustain the motion for peremptory instructions.

3. **Appeal and error. Party moving for directed verdict on particular grounds is confined to the ground specified.**

A motion in general terms for directed verdict is good, but if the motion purports to specify the particular grounds on which it is rested, the moving party will, on appeal, be confined to the ground thus specified.

4. **Appeal and error. Issue must be submitted to jury where there is conflicting evidence.**

It is a well-settled rule that where there is material conflicting evidence the issue must be submitted to the jury.

5. **Railroads. Failure of plaintiff to comply with chapter 36, Acts 1917, does not entitle defendant to a directed verdict.**

In an action to recover for personal injuries sustained at a railroad crossing where the evidence showed that plaintiff had failed to stop his car in compliance with the requirements of chapter 36, Acts of 1917, held that this was an act of negligence which the jury was bound to consider by way of reduction of damages, but which did not defeat plaintiff's action based on statutory precautions (Shannon's Code, sections 1574 et seq) and therefore did not afford a reason for directed verdict in favor of defendant.

6. **Railroads. Placing locomotive at the rear of the train made defendant's liability absolute under subsection 4 of section 1574, Shannon's Code.**

In an action to recover for personal injuries sustained at a railroad crossing, held that where defendant admitted that its locomotive was placed at the rear of the train that it was impossible for defendant to comply with subsection 4 of section 1574, Shannon's Code and if plaintiff's automobile was an obstruction on the track in front of the train defendant's liability to plaintiff for damages to his automobile was absolute.

7. **Railroads. Trains must be engaged in a switching operation before "statutory precautions" are not required.**

The mere fact that a train is operating "within the switching district" is not sufficient to relieve the operator from compliance with subsection 4, section 1574, Shannon's Code, but the train must be engaged, "in a switching operation."

8. **Railroads. Evidence.**

Where a wrecking train was moving to a wreck, held not to be engaged, "in a switching operation" so as to relieve defendant of compliance with statutory precautions.

9. **Negligence. Contributory negligence does not bar the right to recover damages for failure to observe statutory precautions.**

It is well settled that contributory negligence, however gross it may be, will not bar the right of the injured party to recover some damages for failure to observe statutory precautions, but it does have the effect of mitigating the damages sustained.

10. **Railroads. Railroads are required to sound whistle and ring bell only when approaching crossing properly marked, as required by statutes.**

In an action to recover for personal injuries sustained at railroad crossing on the statutory ground that defendant did not sound whistle and ring the bell when approaching the crossing as required by statute, held that the court properly directed a verdict in favor of defendant where the evidence did not show that the crossing was marked as required by statute.

**11. Damages. Damages for personal injuries is a question for the jury.**

The amount of damages which should be recovered in a case for personal injuries is primarily a question for the jury. When the verdict has received the approval of the trial court and the amount is not so large as to indicate that the jury was moved by passion, prejudice or caprice, the appellate court will not molest the verdict.

Appeal in Error from First Circuit Court, Davidson County; Hon. A. G. Rutherford, Judge.

Affirmed.

Roberts & Roberts, of Nashville, for plaintiff in error.

Stokes & Stokes, of Nashville, for defendant in error.

FAW, P. J.   Roy W. Zearing sued the Tennessee Central Railway Company and recovered a judgment for $2,000 and all costs, from which judgment the Railway Company has appealed in error to this court.

As a matter of convenience, the parties will be designated in this opinion as they appeared on the record in the circuit court, that is, Roy W. Zearing as plaintiff and Tennessee Central Railway Company as defendant.

Plaintiff alleged in his declaration and testified at the trial that a train of cars pushed by a locomotive on defendant's track collided with an automobile, owned and driven by plaintiff, on a grade crossing of defendant's track and a public highway, known as the Murfreesboro pike, in the outskirts of the city of Nashville, and, as a result of the collision, plaintiff's automobile was completely demolished and plaintiff suffered serious and permanent personal injuries.

The case was tried before a jury in the first circuit court of Davidson county, and the jury found the issues in favor of the plaintiff, and assessed his damages at $2,000, and judgment was entered upon the verdict accordingly. The defendant moved for a new trial, but the motion was overruled. Defendant thereupon excepted to the action of the court and prayed, obtained and perfected an appeal in the nature of a writ of error to the Court of Civil Appeals, and the hearing and determination of the case has devolved upon the Middle Section of the Court of Appeals under the provisions of the Act of 1925, chapter 100.

The defendant's assignments of error are three in number, and are as follows:

1. The court erred in overruling the motion made by the defendant at the close of the plaintiff's proof to direct the jury to return a verdict in favor of the defendant and against the plaintiff.

2. The court erred in overruling the motion of the defendant made at the conclusion of all the proof to direct the jury to return a verdict in favor of the defendant.

3. The amount fixed by the jury is excessive; it shows passion or caprice on the part of the jury in assessing the amount of damages, which is wholly out of proportion to the actual damages sustained by the plaintiff.

The defendant is not in a position to assign error upon the action of the trial court in overruling its motion for peremptory instructions made at the close of plaintiff's evidence in chief, for the reason that defendant did not elect to stand upon its motion then made, but proceeded to put on witnesses in its own behalf, and thereby waived its right to rely upon the motion. Coal & Iron Co. v. Bennett, 8 Higgins, 210, 213; Union Insurance Co. v. Smith, 124 U. S., 405, 31 L. Ed. 497; Railway & Light Co. v. Henderson, 118 Tenn., 284; John Gerber Co. v. Smith, 150 Tenn., 255, 259; 26 R. C. L., p. 1083, par. 87.

Learned counsel attempt to differentiate the instant case from the recent case of John Gerber Co. v. Smith, supra, on the ground that in the Gerber case the motion for peremptory instructions was not renewed at the close of all the evidence. It is true that the facts of the two cases differ in the respect thus indicated; but in each of the cases of Coal & Iron Co. v. Bennett, and Union Ins. Co. v. Smith, supra, there was a motion by defendant for a directed verdict overruled at the close of the plaintiff's evidence in chief, and, after evidence had been offered on behalf of defendant, the motion was renewed and again overruled. In the appellate court, the ruling of the trial court on each of the said motions was made the basis of a separate assignment of error, but both were overruled,—one on the ground that it was waived by the introduction of evidence for the defendant, and the other on the ground that there was sufficient evidence to take the case to the jury.

Applying to the instant case the rule established by the above-cited authorities (which rule has been followed by the Court of Civil Appeals in a number of unreported cases), it results that defendant's first assignment of error is overruled.

Coming to the second assignment of error, we find that the defendant's motion for a directed verdict, made at the close of all the evidence, contained specifications of a number of grounds on which it was sought to predicate the motion. Our consideration of the motion will, therefore, be confined to the questions thus specified.

It has been held that grounds of a motion for a directed verdict not specified in the trial court will not be considered on appeal. Georgetown, etc., R. Co. v. Smith (D. C.), 5 L. R. A. (N. S.) 274. (See 26 R. C. L., p. 1074.) But, so far as we are informed, it has never been held in this State that a motion in general terms for a directed verdict may not be sufficient; and we do not now so hold. This court and the Supreme Court have, in numerous cases, treated such motions, couched in general terms, as a sufficient predicate for an as-

signment of error that the trial court erred in declining to sustain a motion for peremptory instructions.

However, if the motion purports to specify the particular ground on which it is rested, the moving party will, on appeal, be confined to the grounds thus specified. It was, in effect, so held by the Supreme Court in the case of City of Nashville v. Miss Clara Hull, MSS. opinion by Mr. Chief Justice Green, at Nashville, December term, 1917. And the same ruling was made by the Court of Civil Appeals in the case of Knoxville Railway & Light Co. v. Newton M. Henderson, Administrator, at Knoxville, August 25, 1923—affirmed by the Supreme Court without opinion on October 10, 1923.

The motion for peremptory instructions, overruled by the trial court in the case now before us, was in these words:

"The defendant moves the court, at the conclusion of all the proof, to direct the jury to return a verdict in favor of the defendant, for the following reasons:

"1. Because the proof shows that the plaintiff ran his automobile into the side of the flat car of the defendant, and that the plaintiff was not on the track, or between the rails, or across the rails, or either of them, at the time of the collision; and hence, under the undisputed testimony of the plaintiff himself, that he cannot recover in this case.

"2. The plaintiff's own testimony shows conclusively and is uncontradicted, that his own negligence in failing to observe chapter 36 of the Acts of 1917, was the direct and proximate cause of the accident and injury.

"3. Under the facts of this case, in no event could the plaintiff have appeared as an obstruction on the track for but a mere second or moment of time prior to the collision; and, hence, the operatives of the train had no opportunity to observe the statutory precautions of ringing the bell and blowing the whistle after he appeared.

"4. The testimony shows that on approaching this crossing the whistle was sounded and the bell was rung by the engineer and fireman on the train, and that there was a man on the lookout ahead in the person of flagman J. H. Tucker, who had a torch and two lanterns, one throwing a red light and the other a white light; and that this flagman was stationed in a position where he could, and did flag and did communicate with the operatives of the train by means of his lantern; and thus the train was under the full and complete control of its operatives by and through the means of communication aforesaid.

"5. This was an operation of the train within the switching district, and the defendant had a right so to operate its train under the facts and circumstances here shown; and the running of its train with the flat car and other cars in front of the engine and being

pushed by the engine is not a violation of the statute, but, on the contrary, was within the legal and statutory rights of the defendant railway company. Under the facts of this case, this was the only proper and efficient method of operating this train at the time mentioned in the declaration herein.

"6. It was the duty of the plaintiff, before going upon the track, with the location of which he was well acquainted, to stop, look and listen before going upon the track, and the plaintiff, wholly failed to comply with his said duty and the injury received by him was the direct and proximate cause of his own said negligence.

"7. The defendant specially moves the court to direct the jury to return a verdict for the defendant under that clause of the first count of the declaration which undertakes to predicate the right of recovery on the violation by the defendant of subsection 1 of section 1574 of Shannon's Code, with respect to the erection of signs and the blowing of the whistle or the ringing of the bell at any such crossing, because: (a) the proof in this case wholly fails to show that there was at that time, September 18, 1924, a sign at the crossing in question; (b) there is no proof whatever to show that such sign, if any there was, had been designated or erected by the overseers of such public road, or by Davidson county, or by the city of Nashville; (c) there is no proof that the sign, if any there was, contained the proper and necessary inscription, to-wit:

" 'Look for cars when you hear the whistle or bell.'    (d)    The plaintiff has failed to show that this crossing was such a crossing as is contemplated by subsection 1 of section 1574 of Shannon's Code; and hence, no recovery can be had upon this part of the declaration.

"8. Chapter 36 of the Acts of 1917, applies in this case and bars a recovery on the part of the plaintiff because said Act on its face shows that only in so far as the common law is concerned, or a right of recovery under the common law, that the statute does not apply. In other words, the statute does apply where a plaintiff seeks to recover purely on statutory grounds, and this is a statutory action and not an action under the common law. The statute states that it does not apply in common-law cases or affect a plaintiff's right of action under the common law, but it does not say that it does not apply in statutory actions; hence, said statute does apply in a case where the plaintiff predicates his right to recover solely upon the statutes of the State.

"9. The failure of the plaintiff to observe this statute, which was, and is, a misdemeanor, and the admission of the plaintiff as a witness on the stand that he is guilty of a misdemeanor in failing to observe said statute, or, rather, his admission of the existence of the fact which of itself makes him guilty of a misdemeanor thereunder, estops him from relying upon and claiming that the defendant itself should respond in damages to him for the sole reason that it failed

on its part to observe a statute, which statute alleged to have been violated by the defendant does not make the defendant's violation thereof a misdemeanor. In other words, the plaintiff himself is guilty of a misdemeanor for violating a statute, as a direct and proximate result of which the accident occurred, according to his own admission, whereas the defendant is not guilty of a misdemeanor even if it did violate the statute alleged by the plaintiff to have been violated by the defendant.''

It is seen that in some instances substantially the same question is raised by two or more of the subheads of the above-quoted motion.

(1) It appears, without dispute, that there was a collision between a "wrecking train" of the defendant, consisting of five or six cars pushed by a locomotive, and a Ford automobile owned and driven by the plaintiff, at the crossing of the Murfreesboro pike and the defendant's track, on or near the southern corporate boundary line of the city of Nashville. The collision occurred about 8:15 P. M. on September 18, 1924. It was after nightfall and the night was very dark. Plaintiff says it was "drizzling rain." Plaintiff was traveling northward on the pike and the railroad train was moving westward along defendant's track. The track and the pike intersect practically at right angles.

Plaintiff testified explicitly and unequivocally that he drove upon the railroad track and was between the rails when the collision occurred; that he did not see or hear the train until he was upon the track and the train was only a few feet from him; that he was unable to get off the track in time to avoid the collision; that a flat car was moving in front of the train; that the end of the flat car struck the right side of his automobile and pushed it for a distance of two hundred and three feet along the track and until the train stopped; that the automobile was completely demolished and plaintiff was seriously and permanently injured in his person. Plaintiff introduced other witnesses who testified to circumstances which tended to corroborate plaintiff's statement that his automobile was an obstruction on the track in front of the train when the collision occurred.

The defendant's contention, supported by persuasive evidence, was that the plaintiff drove his automobile into the side of the leading car in the train, where the automobile became entangled or fastened in some manner and was dragged alongside the track until the train was stopped.

There was a sharp conflict in the evidence between the two theories above outlined, and under well-settled rules, it was proper to submit this issue to the jury.

(2) It is seen that three of the numbered specifications in the motion to-wit, the second, eighth and ninth, seek to make the question

that plaintiff's action is barred for the reason that he failed to ·comply with the requirements of chapter 36 of the Acts of 1917. Section 1 of said Act is as follows: ''That the driver of every automobile, motorcycle or other· motor driven vehicle be and is hereby required, when traveling any public road, street or highway, to come to a full stop, before crossing railroad tracks at grade, ·at a distance of not less than ten feet nor more than fifty feet from the nearest rail of such railroad track or tracks; provided, however, that this Act shall not apply to the automobiles or other motor driven vehicles of any municipality when responding to an alarm of fire, and shall not apply to the automobiles or other motor driven vehicles of the police department of any municipality when responding to an emergency call; provided further, that this section shall not apply to railroad crossings at grade while flagmen or watchmen are protecting such crossings.''

Section 2 provides that any person violating section 1, supra, shall be guilty of a misdemeanor, punishable by a fine of not less than $1 and not more than $10.

And section 3 of the Act is in these words: ''That none of the provisions of this Act shall be construed as abridging or in any way affecting the common-law right of recovery of litigants in damage suits that may be pending or hereafter brought against any railroad company or other common carriers.''

The plaintiff admitted on the witness stand that he did not stop before entering upon the defendant's track at the time of the collision, and that if he had stopped ten feet from the track the collision would not have occurred. Plaintiff's failure to comply with the statute above quoted was an act of negligence on his part which the jury was bound to consider by way of reduction of damages, but it did not defeat his action based on the ''statutory precautions'' (Shannon's Code, sections 1574 et seq) and therefore, did not afford a reason for a directed verdict in favor of defendant. It was so held by the Court of Appeals, sitting en banc, in the case of Southern Railway v. Ed Malone, at Knoxville, August 8, 1925 (opinion by Judge DeWitt), and by the Middle Section of the Court of Appeals in an opinion prepared by the present writer in the case of Tennessee Central Railway Co. v. W. S. Page, on November 7, 1925.

(3) The admitted fact that there was no locomotive in front of the train which struck plaintiff's automobile, but that the train was propelled by a locomotive attached to its rear, is a sufficient answer to the proposition advanced in the third and fourth subheads of the motion. The voluntary act of the defendant in placing the locomotive at the rear of the train of cars made it impossible for defendant to ''keep the engineer, fireman, or some other person upon the loco-motive always upon the lookout ahead'' etc., as required by subsec-

tion 4 of section 1574, Shannon's Code, and (if plaintiff's automobile was an obstruction on the track in front of the train) defendant's liability for injuries to plaintiff and his automobile was absolute. L. & N. Railroad Co. v. Mayers, 147 Tenn., 315, 319.

(4)  Through the fifth subhead of defendant's motion the defendant insists that "this was an operation of the train within the switching district," and that, therefore, it does not fall within the rule of the Mayers case, supra.

The "statutory precautions" are not required to be observed when the employees of a Railway Company are engaged in the distribution of detached cars, in the making up of trains, and in other necessary switching, in and upon its yards, depot grounds, and sidetracks. It is not possible, in such case, to have the engine always in front of the moving portions of the train, yet the doing of the things indicated is absolutely indispensable to the efficient operation of railroads. The common law, not the statute, prescribes the rule of action for railway companies in such situation. Railroad v. Pugh, 95 Tenn., 419, 422.

However, the mere fact that a train is operating "within the switching district" is not sufficient to relieve the operator from a compliance with the statute. The train must be engaged in a switching operation. Railroad v. Martin, 113 Tenn., 266, 286; Chattanooga Station Co. v. Harper, 138 Tenn., 562, 578.

It is admitted that the accident in question did not occur within the railroad "yards." It was about three-fourths of a mile from the defendant's yard limits. Defendant undertakes to make a distinction between "yard limits" and "switching district," and insists that the accident occurred within the switching district and while defendant's train crew was engaged in a switching operation.

It appears that a locomotive of defendant had been derailed at or near Woodward, a station near the bridge where defendant's track crosses the Cumberland River north or northwest of the city of Nashville. The wrecking train was made up in the yards of defendant near the foot of Broad street and was on its way to Woodward, a distance of eight or ten miles, for the purpose of rerailing the derailed locomotive.

The defendant's track from its Southern Yards to Woodward is known as the Belt Line—presumably because it partially encircles, or "belts," the city of Nashville; but it is a link in the main line of defendant over which all the defendant's trains from Nashville to Clarksville operate. The Belt Line consists of single track, with spur tracks diverging at several points along the way to serve industries and (at one point) to effect a physical connection with the tracks of the L. & N. and the N. C. & St. L. Railroads. There are

also short. sidetracks at Van Blarcom and Pittsfield, stations near the northern (or western) end of the Belt Line.

We are of the opinion that the trial judge did not err in refusing to hold, as a matter of law, that defendant's wrecking train was engaged in a switching operation when it collided with plaintiff's automobile. The trial judge submitted the question to the jury, under the following instructions, viz:

"If you should find that the place of this accident was within the limits of defendant's switching yards and that the defendant's said train was at the time engaged in a switching operation, then the above-mentioned statute requiring the engineer, fireman, or some other person to be upon the locomotive always upon the lookout ahead would not apply, as there would be no such duty under said statute. But if you shall find that the accident complained of did not occur within the limits of the defendant's switching yards, or that said train was not engaged in a switching operation, then said statute would apply, and the defendant's liability would be absolute in some amount, not because the train was running with the engine in the rear, which the defendant at its own risk had a right to do, but because it was impossible to observe the said statutory precautions against accidents while operating a train in that manner."

The verdict implies that the jury found that defendant's train was not engaged in a switching operation. In our opinion, the trial court might well have instructed the jury that defendant was not engaged in a switching operation at the time of the collision, and, as the jury so found, defendant has no reason to complain of the fact that the court submittted that question to the jury. Bolin v. State, 9 Lea, 516, 519.

(5) In the sixth subhead of the motion, the defendant says (without reference to the Act of 1917, chapter 36) that plaintiff's injuries were the direct and proximate result of his own negligence in failing to stop, look and listen before entering upon the railroad track. If this be conceded, it would not follow that the trial judge should have directed a verdict for defendant. By repeated published opinions of the Supreme Court it is well settled that, in a case founded on the failure to observe the statutory precautions, and in which they have not been observed, any contributory negligence of the injured party can only have the effect of mitigating the damages sustained. It is also well settled by the same cases that, however gross the contributory negligence in such cases may be, it will not operate as a bar to the right of the injured party to recover some damages. Railroad v. Binkley, 127 Tenn., 77, 86.

(6) The trial judge granted that part of defendant's motion for peremptory instructions contained in the seventh subhead thereof, and instructed the jury as follows:

"Gentlemen of the jury, the plaintiff's declaration alleges, among other things, that the defendant failed to sound the whistle or ring the bell when it approached the crossing where the Murfreesboro pike and the Railroad cross, and it alleges that the defendant is liable on that account. Now, a motion has been made by the defendant to direct a verdict in favor of the defendant as to that particular thing; and the court is inclined to think that is right; and I am explaining these things because I think the jury has got a right to understand why they are being directed to do things. There is no proof here in this record to the effect that that cross-arm sign was up there with this language: 'Look out for the cars when you hear the whistle or bell' written on it; there is no proof in this record on that subject; and the railroad does not have to blow the whistle when that is not there. So I direct you to return a verdict in favor of the defendant so far as that particular motion is concerned, or that particular part of the declaration is concerned. So say you all, gentlemen?

"(Affirmation by jury.)

"Now, then, that leaves the case here as to the balance of the declaration; and the fact that that was taken out don't mean that it weakens or strengthens the balance of it. It is for you to try the balance of the declaration on its merits."

The eighth and ninth subheads of the motion have been heretofore considered along with the second subhead.

This disposes of the several grounds of the motion for peremptory instructions in favor of defendant. The trial court did not err when he declined to direct a verdict for defendant. The second assignment of error is overruled.

Through its third (and last) assignment of error the defendant says that the amount of the verdict is excessive, and "wholly out of proportion to the actual damages sustained by the plaintiff."

It is proven, and is undisputed, that plaintiff's automobile was worth $400, and was a total loss. It may be assumed, therefore, that the jury allowed $1,600 for plaintiff's personal injuries.

Learned counsel for defendant seemingly do not press the third assignment of error with any great degree of confidence, as all that is said in their brief and written argument with respect to the third assignment is as follows: "Of course your Honors cannot see the plaintiff, but this proof shows, especially the testimony of Dr. L. E. Burch, his attending physician, the nature of his injury. About the only injury he received worthy of mention is that he had his little finger hurt and had some bruises about his body that soon healed up. The verdict of the jury is excessive."

In his testimony, the plaintiff described his injuries as follows:

"Q. Now, Mr. Zearing, I want you to just tell the jury the nature of your injuries? A. The tendons—This was torn back, was laid back over the knuckles here (indicating on hand).

"Q. I want you to show your hand to the jury. A. This was torn; it wasn't cut up, it was gouged and torn and laid back over here; these tendons were all exposed here; a large cut down here, and the tendon in this finger wasn't severed, but these two were, and, of course, these two fingers at that time were lain back—

"Q. I ask the jury just to put their hands on this portion here. Have you any feeling in that? A. No sir. There is a spot that is dead.

"Q. Can you feel that (tapping the portion indicated)? A. No sir.

"Q. Let this man down here see it too. A. (Witness exhibits it to the juror.)

"Q. Now, what was the condition of your back? Just begin now first, when you got to the hospital that night, was it giving you much or little pain? A. Yes sir, I couldn't stand on it; that is, I was carried on a stretcher into the hospital and a man on each side of me. My legs wouldn't function.

"Q. Now, what was done for you that night with reference to your back; I understood you to say Mr. Bradford, the interne, sewed up your hand? A. Well, there was really nothing that he could do to my back, only await developments, after an examination. Dr. Bradford made an examination of my back.

"Q. Now, did Dr. Burch then take charge of the case? A. Yes sir.

"Q. Did they take an X-ray of your back? A. Yes sir.

"Q. They found no bones broken? A. No sir, no bones broken.

"Q. How long were you kept at the infirmary? A. I think I was there eight days.

"Q. Eight days; during that time what was the doctor's instructions as to your remaining quiet? A. Told me to stay in bed, and they didn't feed me very much.

"Q. Gave you a liquid diet? A. Yes sir.

"Q. Now, Mr. Zearing, before you had that accident had you had any trouble with your back? A. No sir, not in the least.

"Q. Where you a very active man? A. Very active.

"Q. I believe you say you are sales manager of the Nokol Heating Company? A. Yes sir.

"Q. Now, what business are you engaged in? A. Installing oil-burning equipment for homes and residences.

"Q. Now, as sales manager, state whether or not you at times assist in the installation? A. Yes sir, I have assisted in the installation.

"Q. Have you been able to do any of that since you got your back hurt? A. Not any lifting part of it, no sir.

"Q. That is what I say? A. No sir.

"Q. Can you lift now like you did? A. No sir, I cannot.

"Q. Now, what effect does it have if you remain sitting for a good while, that is, when you start to get up? A. Can't get up; I want to stick there; in other words, it is an effort for me to get up.

"Q. It is an effort for you to get up? A. Yes sir.

"Q. Now, is that effort attended with any pain? A. At times.

"Q. What effect, if any, does a change in the atmosphere between sunshine and rainy weather have? A. In the morning I am always stiff in my hip joints; more so on a cloudy, rainy, foggy morning, and damp.

"Q. You get up, exercise and then— A. In the afternoons I seem to be perfectly normal, apparently.

"Q. Had you had any experience of that kind in your life before this accident? A. No sir.

"Q. I believe you testified that this injury on your hand was not what you would call a cut, but was just the flesh there gouged out and the skin was lain back? A. Yes, sir, was a laceration; it was torn, not cut.

"Q. Did you have any bruises on your body? A. Yes sir, I had some bruises on my back and some cuts and bruises on this leg up to my knee; a number of different ones. They were superficial."

The amount which should be recovered in a case of this kind is primarily a question of fact for the jury. (127 Tenn., 861.) The verdict has received the approval of the trial judge, and the amount is not so large as to indicate to us that the jury was moved by passion, prejudice or caprice. The third assignment of error is overruled.

It results that the judgment of the circuit court is affirmed. Judgment will be entered here in favor of the plaintiff Roy W. Zearing, and against the defendant Tennessee Central Railway Company, for $2,000, with interest thereon from the date of the judgment below (March 19, 1925), and for the costs of the circuit court. The costs of the appeal will be adjudged against the defendant Railway Company and the sureties on its appeal bond.

Crownover and DeWitt, JJ., concur.