TOWN OF DICKSON v. STEPHENS.—96 S. W. (2d) 201.

Middle Section.   November 30, 1935.

Petition for Certiorari denied by Supreme Court, July 3, 1936.

F. S. Hall and Clark Leech, both of Dickson, for plaintiff in error.
Earl A. Brown and J. B. White, both of Dickson, and W. M. Leech, of Charlotte, for defendant in error.

FAW, P. J. The defendant in error, J. W. Stephens (who was plaintiff below and will be hereinafter so designated), is the owner of a tract of farming and pasture land in the Fifth Civil district of Dickson county, about one mile from the corporate limits of the town of Dickson, containing approximately 500 acres, and a stream of water known as Piney river flows through said farm.

On November 12, 1931, the plaintiff sued the town of Dickson, a municipal corporation, in the circuit court of Dickson county, for $10,000 as damages for the alleged pollution of the waters of Piney river by the drainage of sewage from a ''disposal plant'' or ''septic tank'' constructed by the defendant below (and hereinafter called defendant) on the bank of Piney river about a half mile from Dickson and a half mile or more above plaintiff's farm.

The case was tried to a jury three times in the circuit court. At the first trial (November term, 1932), the jury failed to agree and a mistrial was entered. At the second trial (in April, 1933), the jury failed again to agree and a mistrial was entered.

At the November term, 1933, the case was tried the third time, and the jury found the issues in favor of the plaintiff and assessed his damages at $100, and judgment of the court was thereupon rendered that plaintiff J. W. Stephens have and recover of defendant town of Dickson the sum of $100, together with all the costs of the cause. After its motion for a new trial had been overruled, defendant prayed and was granted an appeal in error to this court, which appeal was duly perfected, and the case is before this court for review upon a record of 1,240 pages, exclusive of several documentary exhibits and 181 pages of assignments of errors and briefs.

■ However, the evidence heard and the proceedings had at each of the three trials were preserved by a separate bill of exceptions, seasonably authenticated and filed in each instance, and the defendant town of Dickson has assigned errors upon certain rulings of the trial court at each of the three trials. Where bills of exceptions have been thus preserved upon several successive trials of a case in the trial court, the established practice is for the appellate court to consider the record of each trial *separately and in the order of time in which the trials occurred.* Memphis & C. R. Co. v. Scott, 87 Tenn., 494, 11 S. W., 317; Jenkins v. Hankins, 98 Tenn., 545, 41 S. W., 1028; Baugh v. Nashville, C. & St. L. R. Co., 98 Tenn., 119, 121, 38 S. W., 433; Barnes v. Noel, 131 Tenn., 126, 134, 174 S. W., 276.

We shall, therefore, first dispose of the assignments of error directed to the first trial.

On the first trial a motion for a directed verdict in its favor was made by defendant, and overruled by the trial court at the close of the plaintiff's evidence and again at the close of all the evidence. After a mistrial had been entered because of the failure of the jury to agree on a verdict, the defendant moved the court to reconsider its action in entering a mistrial in the case and to sustain the motion theretofore made for a directed verdict in favor of the defendant.

The first three of the assignments of error filed by the defendant in this court are that: (1) "The court erred in overruling defendant's motion for a directed verdict at the conclusion of the plaintiff's proof in chief;" (2) "The court erred in overruling the defendant's motion for a directed verdict offered at the conclusion of all the proof;" and (3) "The Court erred in overruling defendant's motion to reconsider its action in entering a mistrial and in not sustaining defendant's motion for a directed verdict."

■ The defendant is not in a position to assign error upon the action of the trial court in overruling its motion for peremptory instructions made at the close of plaintiff's evidence in chief, for the reason that defendant did not elect to stand upon its motion then made, but proceeded to put on witnesses in its own behalf, and thereby waived its right to rely upon said motion. Tennessee Central Railway Co. v. Zearing, 2 Tenn. App., 451, 454, and authorities there cited. The first assignment of error is therefore overruled.

■ If the trial court erroneously overruled defendant's motion for a directed verdict at the close of all the evidence, such error is available to the defendant on this appeal, notwithstanding the disagreement of the jury and entry of a mistrial, for the defendant (having preserved its exceptions and appealed from the final judgment) is entitled to the benefit of the former trial without regard to the merits of the case as developed on any subsequent trial. Barnes v. Noel, supra, 131 Tenn., 126, at page 133, 174 S. W., 276; Chickamauga Quarry & Construction Co. v. Pundt, 136 Tenn., 328,

331, 189 S. W., 686; Merriman v. Coca Cola Bottling Co. 17 Tenn. App., 433, 447, 68 S. W. (2d), 149.

It appears that the aforesaid motion of the defendant for a directed verdict at the close of all the evidence specified, with great particularity, the grounds on which it was rested.

A motion for a directed verdict couched in general terms may be a sufficient predicate for an assignment that the trial court erred in declining to sustain such motion; but "if the motion purports to specify the particular ground on which it is rested, the moving party will, on appeal, be confined to the grounds thus specified." Lawson v. Producers' & Refiners' Corporation, 157 Tenn., 455, 459, 9 S. W. (2d), 1026, 1027; Tennessee Central Railway Co. v. Zearing, supra, 2 Tenn. App., 451, at pages 454, 455.

The motion now under consideration was as follows:

"Comes the Defendant, Town of Dickson, at the conclusion of all the proof, and moves the Court to instruct the jury to return a verdict in favor of the defendant, for the following reasons:

"1. That the preponderance of the evidence shows that Piney River on the Stephens place is as pure, as clear and unpolluted, to the extent that it could not be a nuisance.

"2. That tests made by the State Department of Health, introduced as evidence in this cause, shows undisputedly that the condition of Piney River on the Stephens' property is not a nuisance.

"3. That no evidence has been introduced upon which a jury could base a verdict against the defendant; no actual damages having been proved.

"4. The evidence introduced in regard to damages suffered by the plaintiff is so meager, vague, uncertain and speculative that no judgment for damages could be based upon it.

"5. The preponderance of the evidence shows the water on Stephens' property to be fit for consumption by all kinds of live stock.

"6. The undisputed evidence is that the property is renting for exactly the same rental that it was prior to the installation of the sewerage system, that is one-half of the profit.

"7. There is no evidence that the water in Piney River on the Stephens' property was not fit to drink by cattle during the years of 1929, 1930 and 1931.

"8. The preponderance of the evidence shows the septic tank to be of permanent construction, operating without negligence, and not subject to change, and the preponderance of the evidence shows the condition of the creek on Stephens place to be in the same condition now as before the installation of the said tank, and no evidence has been introduced in regard to damages suffered by the plaintiff upon which a verdict could be based.

"9. The construction of the said tank, and its operation without

negligence, having been proven, by a preponderance of the evidence, to be lawful,—the burden of proof is upon the plaintiff to prove it to be a nuisance, nevertheless, the preponderance of the evidence shows clearly that it is not a nuisance.

"10. The preponderance of the evidence shows that 1929 was an exceedingly dry year, and that conditions complained of in regard to cattle getting through the fences existed, not only on plaintiff's premises, but also on the premises of plaintiff's witness, T. M. Dotson, on White Oak Creek in Humphreys County.

"11. The preponderance of the evidence shows that the Town of Dickson, through the installation and operation of its sewerage system, has inflicted no actual damages to the plaintiff; nor has he suffered any special damage by reason of any act of the defendant.

"12. Because the preponderance of the evidence is in favor of the defendant and against the plaintiff's contention.

"13. Because the preponderance of the evidence shows the Town of Dickson to be a municipal corporation of the State of Tennessee with legislative authority to install and operate a sewerage system, septic tanks, etc., and as such, and as a riparian owner on a part of Piney Creek, that the use it is making of said stream is a reasonable use and not a burden to the plaintiff in this cause.

"14. That the use made of the said Piney Creek complained of is shown by a preponderance of the evidence, not to be such a use as would amount to a taking of the plaintiff's property, either temporary or permanent.

"15. That the preponderance of the evidence shows that there is no odor from the said stream as it flows through the plaintiff's premises as would entitle plaintiff to recover damages.

"16. The preponderance of the evidence shows that the stream on Stephens property is not openly injurious to public health and comfort.

"17. The preponderance of the evidence shows that at the time said sewerage system was installed, it was then, and now is, necessary to the health and comfort of the defendant, Town of Dickson.

"And upon this motion defendant prays judgment of the Court."

It is seen that all of the seventeen specific "reasons" offered by the motion for a directed verdict in favor of the defendant (with possibly five exceptions to which we will refer later) are, in express terms, based upon an asserted "preponderance of the evidence." For the trial judge to direct a verdict for either party upon a "preponderance of the evidence" would be an invasion of the province of the jury, and would, in effect, deprive the adversary party of his constitutional right of trial by jury. Hence there can be no exercise of the power to direct a verdict in any case, where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence. It has been so

held many times by our Supreme Court and by this court. Some of the cases to the point are collected in Elmore v. Thompson, 14 Tenn. App., 78, 81.

It follows that error cannot be successfully assigned upon the overrulement of defendant's motion for a directed verdict, in so far as it is based upon an asserted preponderance of the evidence, and this includes twelve of the seventeen grounds specified in the motion now under consideration.

■ It appears from the motion for peremptory instructions hereinbefore quoted that the second, third, fourth, sixth, and seventh specifications thereof are not, *in terms,* based upon a preponderance of the evidence. To repeat: The second specification is "that tests made by the State Department of Health, introduced as evidence in this cause, shows undisputedly that the condition of Piney River on the Stephens property is not a nuisance."

The specification just quoted may reasonably be interpreted as an assertion that it appears from undisputed evidence "that the condition of Piney River on the Stephens property is not a nuisance." Without intending to suggest an opinion as to the greater weight of the evidence, we find much evidence on the first trial from which the jury might have found that "the condition of Piney River on the Stephens property" was a nuisance at the time averred in the declaration, and the second specification therefore stated no reason for directing a verdict for defendant.

■■ The third, fourth, and sixth specifications are, in substance, that the evidence in regard to damages suffered by the plaintiff is too meager, vague, uncertain, and speculative to afford proof of actual damages upon which a judgment could be based.

Although there is much conflict in the evidence with respect to the extent of the pollution of the waters of Piney river and resulting damages, if any, suffered by plaintiff, there is unquestionably evidence that plaintiff suffered substantial damages by reason of the pollution (from some source) of Piney river. Where there is evidence (in actions for property damage) from which the jury could find that the plaintiff is entitled to recover substantial damages from the defendant, but the evidence does not afford a sufficient basis for the pecuniary measurement of such damages, the defendant is not entitled to a directed verdict. The remedy in such case is a remand for a retrial on the question of the amount of damages. Bailey Jones v. Tennessee Central Railway Co., 8 Tenn. App., 183; Aycock v. Nashville, C. & St. L. Ry. Co., 4 Tenn. App., 655.

■ The seventh specification in the defendant's motion for a directed verdict on the first trial is that "there is no evidence that the water in Piney River on the Stephens property was not fit to drink by cattle during the years of 1929, 1930 and 1931." The record is otherwise. The plaintiff Stephens, and other witnesses in

his behalf, testified that, prior to the institution of this suit, particularly in the years of 1930 and 1931, cattle would not drink the water in Piney creek on plaintiff's farm because of its polluted condition.

It results that the trial judge did not err in overruling defendant's motion for a directed verdict at the close of the evidence on the first trial, and defendant's second and third assignments of error directed to the rulings on that trial are overruled. ·

The defendant's fourth assignment of error directed to the first trial is that the court erred in not allowing defendant the right to appeal from the court's decision in refusing to sustain the defendant's motion to reconsider.

It is too well settled to need citation of authority that an appeal or appeal in the nature of a writ of error lies only from a final judgment; hence the trial court did not err in denying the defendant an appeal from the order declaring a mistrial and continuing the case until the next term of the court. The fourth assignment of error is overruled.

The remaining assignments of error directed to the first trial (numbered 5, 6, 7, and 8) must be, and they are, overruled for either of three reasons.

(a) Each of these assignments asserts error in the admission of evidence. No such errors were assigned in the motion for a new trial below. Error in the admission or exclusion of testimony will not constitute a ground for reversal unless it affirmatively appears that the same was specifically stated in the motion made for a new trial in the lower court and decided adversely to the plaintiff in error, but will be treated as waived. See Rules of Supreme Court and Rules of Court of Appeals, Williams Anno. Code, pp. 527 and 547; Jacks v. Williams-Robinson Lumber Co., 125 Tenn., 123, 140 S. W., 1066; McCommon v. State, 130 Tenn., 1, 168 S. W., 581.

(b) The Rules of the Supreme Court and of the Court of Appeals governing assignments of error require that "when the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected." See Rules in Williams Anno. Code, pp. 527 and 546.

The assignments now under consideration do not conform to the rules last cited, but merely assert that the court erred in admitting evidence, over the objection of the defendant, "as to the condition of the creek above and not on the plaintiff's premises," "as to the value of the farm in question," "as to how much the pasture was worth per head per month," and "as to how many cattle the plaintiff's pasture would carry."

(c) If the trial court erred in the particulars suggested by these four assignments (which we do not hold), such errors became immaterial upon the entry of a mistrial, for the remedy for such er-

rors would have been a new trial, and that followed the mistrial as a matter of course.

This disposes of all the assignments of error relating to the first trial of the case below. They are all overruled.

In the second group of assignments of error the defendant has an assignment (numbered 6) that the court erred in overruling defendant's demurrer to plaintiff's declaration.

The defendant demurred to the declaration as originally filed on November 23, 1931, but the record discloses no ruling of the court on this demurrer, presumably for the reason that, on July 28, 1932, plaintiff filed an "amended declaration," which was a complete declaration in two counts, covering the entire ground of the original declaration, and which was treated as a substitute for the original declaration.

In the first count of the amended declaration it was averred, in effect, that the alleged injuries to plaintiff's farm resulting from the erection and maintenance of the disposal plant, or septic tank, erected and maintained by defendant (a municipal corporation), were permanent, and damages were sought on that theory.

In the second count it was averred that the alleged "nuisance" was "remediable" and damages were sought for temporary or recurring injuries.

To the latter declaration the defendant interposed a demurrer, the gist of which was that the two counts of the declaration were inconsistent and repugnant, and evidence admissible under one count would not be admissible under the other count.

After the last-mentioned demurrer was filed, the plaintiff, on leave granted, withdrew the first count of his declaration and "thereupon the demurrer of the defendant was overruled." It is obvious that the withdrawal of the first count of the declaration removed all ground for the demurrer theretofore filed.

However, after the aforesaid amendment by striking out the first count of the declaration, the defendant again demurred on the ground, in substance, that the remaining count of the declaration presented a misjoinder of inconsistent and repugnant causes of action; but it does not appear from the record that the trial court ruled upon the latter demurrer, or that his action thereon was invoked at any time before the trial of the case, and the defendant (after its demurrer was filed) filed a plea of the general issue.

Pleading to the merits, and going to trial on such plea without invoking the ruling of the court upon the demurrer, operated as a waiver and abandonment of the demurrer. Patterson v. Tate, 141 Tenn., 607, 611, 213 S. W., 981; Rogers v. Betterton & Co., 93 Tenn., 630, 632, 27 S. W., 1017. The assignment of error predicated upon the alleged overrulement of defendant's demurrer to the declaration is overruled.

On the second trial below, motions for a directed verdict for defendant were made and overruled, both at the close of the plaintiff's proof in chief and at the close of all the evidence. In this court, the first and second assignments of error in the group of assignments directed to the second trial, challenge the action of the trial court in overruling said motions for a directed verdict.

As heretofore held in connection with the first trial, defendant waived its motion made at the close of plaintiff's proof by thereafter putting on evidence in its own behalf.

The motion made at the close of all the evidence specified, with much particularity, the grounds on which defendant sought to rely for a directed verdict, and, although some of its specifications are somewhat differently phrased, it is, in substance, very much the same as the motion for a directed verdict at the close of the evidence on the first trial, and it was properly overruled for the reasons heretofore stated in overruling similar assignments of error relating to the first trial, and defendant's first and second assignments of error relating to the second trial are overruled.

The remaining assignments of error (numbered 3, 4, and 5) directed to rulings on the second trial, complain of alleged error of the trial court in refusing to give in charge to the jury certain special requests of the defendant for instructions.

If there was error in refusing these requests (as to which we express no opinion), it became immaterial when a mistrial was entered and the case was remanded to the docket for a new trial, as the only remedy for prejudicial error in the refusal of special requests for instructions is the grant of a new trial. The third, fourth, and fifth assignments are overruled. This disposes of all the assignments which complain of error at the second trial.

Defendant incorporates with its assignments of error directed to the third trial a number of assignments which complain of alleged errors in the first trial and also a number of assignments which complain of alleged errors in the second trial. These assignments are numbered 1 to 8, inclusive, and 19, and are mere repetitions of assignments directed to the first and second trials, respectively, which assignments we have hereinbefore overruled.

The assignments of error to which we will hereinafter refer relate to the third (and last) trial of the case.

The ninth assignment is that: "The court erred in admitting testimony over the objection of the defendant purporting to describe the waters of Piney Creek and the bed of the said Creek as it existed at and below the septic tank, and not on the plaintiff's property."

The tenth assignment is that: "The Court erred in admitting in evidence samples of the water alleged to have been taken from Piney

Creek above and off the plaintiff's property and around the septic tank on H. T. Cowan's property."

The ninth and tenth assignments do not conform to the rule of this court governing assignments of error as herein cited; that is, that "when the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found."

However, we have considered the proposition stated in the ninth and tenth assignments, in connection with the issues and evidence in the case, and we are of the opinion that there was no error in the admission of evidence of the character indicated by these assignments. The condition of the septic tank in question, the outflow from the tank into Piney river, and the condition of Piney river (*a running stream*) between the septic tank and plaintiff's farm—a distance of approximately three-fourths of a mile—were circumstances which the jury could properly consider, in connection with the evidence relating directly to the condition of Piney river *on plaintiff's farm*, in reaching a conclusion as to whether Piney river was polluted and contaminated on plaintiff's farm. The trial judge charged the jury that "in order to recover, the plaintiff must show by a preponderance of the evidence that . . . by reason of this sewerage disposal plant within the years mentioned, the creek *on his place* was polluted and waters contaminated . . . that is, first, it must be shown that (the) sewerage disposal plant created a nuisance *on plaintiff's farm*, and second, that this caused a nuisance during the *three* years prior (to the commencement of this suit) or part of that time." (The italicizing is ours.)

For obvious reasons, this case differs from the case of Louisville & N. Terminal Co. v. Lellyett, 103 Tenn., 368, 408, 85 S. W., 881, 1 L. R. A. (N. S.), 49 (cited in defendant's brief), wherein it was held that it was not competent to show how other property contiguous or near to the property there in controversy had been affected by smoke, dust, and cinders, etc., resulting from the installation and operation of the railroad terminal plant. The ninth and tenth assignments are overruled.

The eleventh assignment is as follows:

"The Court erred in refusing to allow the jury to hear the testimony of defendant's witness, Howard G. Schmidt, an employee of the state department of Public Health, and supervisor and inspector of sewerage systems for the said State Department, when the said witness testified in the absence of the jury that the affluent from the Springfield, Tennessee, plant was not as clear, and as free from odor, as that from the defendant's septic tank. This testimony was very material, in view of the fact that the plaintiff's witness, J. M. Richards, a consulting engineer, had already testified in the pres-

ence of the jury that the Springfield sewerage disposal plant was of a different character from that of the defendants, and would perform its work better than the defendant's plant.

"The witness, Schmidt, having qualified as an expert on such matters, and being familiar with both the Springfield plant and the Dickson plant, and having examined each of them, and this testimony was further pertinent in view of the fact that the plaintiff's attorney, W. M. Leech, argued to the jury that the defendant should install just such a system as the Springfield tank and correct the alleged injury; that no trouble was had at all with tanks constructed like the Springfield tank. The defendant was denied the privilege of showing by this witness that the tank constructed at Springfield had an offensive odor or that the affluent from the tank was discolored and very offensive, while that from the defendant's tank was clear and with no odor, which said argument is made a part of the record."

The predicate of the assignment just quoted is that the excluded testimony of defendant's witness Schmidt was competent because plaintiff's witness Richards (Richardson) had been permitted to testify before the jury that the Springfield disposal plant was of a different character from that of the defendant, and performed its work better than the defendant's plant. This is a misconception of the record. The whole testimony of the witness Richardson concerning the Springfield plant was as follows:

"Q. Have you recently supervised the construction of such in Tennessee of a plant on that line that does take care of that kind of waste? A. Yes.

"Q. Where, in Tennessee? A. Springfield, Tennessee.

"Q. I hand you here a picture, do you know what this picture is?

"Mr. Hall: We except. I don't know until we find out something about it, and also except to the testimony of this witness because he hasn't stated whether the plant was functioning improperly, or not, and has named a number of things that he has stated might be possible.

"Court: He has answered that; it is competent so far as it goes.

"Q. Is that a picture of the Springfield plant you are looking at? A. It is.

"Q. Is the Dickson plant at all like that plant? A. No, sir.

"Mr. Hall: We except to that.

"Court: No, sir, I don't think we could go into that; could not try Springfield case."

The statement of the trial judge that they "could not try the Springfield case" could not have been understood otherwise than that testimony with reference to the merits or demerits of the Springfield plant was incompetent. It was evidently so understood by counsel, for no further questions were asked the witness Richardson

▮▮▮▮▮▮▮▮▮▮▮▮

about the Springfield plant, and the excluded testimony of the defendant's witness Schmidt was incompetent, and there was no error in its exclusion.

▮▮ ▮▮ The argument of counsel to the jury after the close of the evidence would have no bearing upon the admissibility of evidence. However, the record does not show that counsel for plaintiff made the argument attributed to him in the eleventh assignment of error. True it is so stated in the motion for a new trial below, in the same connection and in the same manner as in the assignment of error here; but the motion for a new trial is a mere pleading and not evidence of what appeared on the trial. Richmond Type & Electrotype Foundry v. Carter, 133 Tenn., 489, 493, 182 S. W. 240. The eleventh assignment is overruled.

▮▮▮ The twelfth assignment is that the trial court erred in refusing to enter a mistrial on motion of the defendant.

The plaintiff was the first witness called and examined at the trial. The motion for a mistrial was made and overruled during the course of his examination. The basis for the motion at the time it was made by defendant's attorneys and acted upon by the court was certain testimony of the plaintiff, which testimony, with the defendant's motion for a mistrial and the ruling of the court thereon, appears from an excerpt from the record, as follows:

"Q. Mr. Stephens, have you ever taken any samples from this creek down there? A. Yes, sir.

"Q. Do you have any of them with you in Court today? A. Yes, sir. I would like the man that sealed that up.

"Q. Did you see that box sealed up? A. Yes, sir.

"Q. Who sealed it? A. Mr. Bill Ellis.

"Q. Anyone else present when it was sealed? A. No, not when this box. Mr. Ray Stuart was present, if I ain't mistaken.

"Q. Is that the same box when it was done? A. Yes, sir.

"Q. When was that done? A. Sometime this summer; I just couldn't say what date.

"Q. Since the last term of Court? A. Yes.

"Q. I will ask you to open that. Was any marks made on these three containers when they were wrapped and sealed? A. Yes, says 'Bill Ellis,' July 21.

"Q. Did you see them sealed? A. Yes.

"Q. Who wrapped them and sealed them? A. Bill Ellis I guess done most of it; I furnished the sacks and sealing.

"Q. Where did the contents of those containers come from, if you know? A. I would have to see the containers before I could say.

"Q. I will ask you to open them and make an examination.

"Mr. Hall: I would like to ask the jury to be excluded; I have a motion to make at this particular time.

"Court: All right, gentlemen go into that room and don't discuss the case.

"Mr. Hall: If the Court please at this time comes the defendant Town of Dickson and moves the Court to enter a mistrial in this cause for the reason that the record shows that seven men placed on this jury, were selected by the sheriff of the county, and from the testimony just disclosed by this witness, the plaintiff in this case, the evidence of the sheriff comes very material in his interest in the law suit, apparently therefore not a proper man to select the jury or jurors to try this law suit, as this witness has just stated Mr. Ellis did most of this; that all this work was done by Mr. Ellis, the sheriff of the county, who the plaintiff knew would be called upon to select the jury; and 7 out of 12 of these men were called by the sheriff.

"Court: Nothing to show that fact, that the sheriff was a witness in this law suit, therefore overruled.

"Mr. Hall: Evidently from the record it shows he was interested because it is not any part of his duty to select and collect these samples for the plaintiff in this case, a matter of which the defendant could have no notice whatever.

"Court: Exception overruled.

"Mr. Hall: Note exception.

"Court: Call the jury. (Jury returned.)"

So far as the record indicates, the case was tried by an unbiased, unprejudiced, and impartial jury. The disposition of the motion for a mistrial upon the ground stated therein was, therefore, a matter within the sound, legal discretion of the trial judge, and we see no evidence of an abuse of that discretion. The twelfth assignment is overruled.

The thirteenth assignment is that the evidence preponderates against the verdict of the jury because of reasons stated in five specifications incorporated in said assignment.

It is a long-established rule that the appellate court will not disturb the verdict of a jury upon the facts, if it is supported by any material evidence and approved by the trial judge; hence an assignment that the evidence preponderates against the jury's verdict presents no question that can be considered by this Court. Illinois Central Railroad Co. v. Abernathey, 106 Tenn., 722, 728, 64 S. W., 3. The thirteenth assignment is overruled.

The fourteenth assignment of error is as follows:

"The amount of damage allowed by the jury is not in any manner responsive to the proof, is wholly speculative and indicates that in the mind of the jury the cumulation of the cost of the two previous trials of this cause was considered, and the jury, by their verdict, conclusively show that they were trying to compromise the law-suit, rather than decide it according to the law and the evidence."

This assignment is too vague and indefinite to point out error in the verdict of the jury. There was evidence which, if accepted by the jury, would have supported a much larger assessment of damages, and it would be difficult to point out any specific evidence that the damages suffered by plaintiff were no more than $100; but if the amount of the verdict was less than the evidence warranted, "it affords the defendant no legal ground of complaint." Illinois Central Railroad Co. v. Abernathey, supra, 106 Tenn., 722, at page 727, 64 S. W., 3, 4. The fourteenth assignment is overruled.

The fifteenth assignment of error is that "the verdict of the jury shows prejudice, passion and caprice, in that no damage whatsoever was proven."

It is sought to support this assignment by pointing out testimony favorable to defendant which (the record shows) was in conflict with testimony for plaintiff, and also by pointing out alleged conflicts between the testimony of the plaintiff and his witness Hugh Reeves on the last trial and on former trials. As hereinbefore pointed out, the preponderance of the evidence and the credibility of witnesses are matters peculiarly within the province of the jury. The fifteenth assignment is overruled.

The sixteenth and seventeenth assignments of error are overruled for reasons stated in the disposition of the thirteenth, fourteenth, and fifteenth assignments, supra.

The eighteenth assignment is that the court erred in overruling the defendant's motion for a directed verdict at the conclusion of all the proof in the last trial of this cause.

This motion specified, with much particularity, fifteen alleged "reasons" for directing a verdict for defendant; but, as in similar motions on the former trials, each and every specification related to a matter about which there was a distinct conflict in the evidence, and, therefore, did not afford a basis for a directed verdict. It is a well-settled rule that, in disposing of a motion for a directed verdict, the trial judge must take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and disregard all countervailing evidence. The credibility of the witnesses is peculiarly a matter for the jury to determine; and if the witnesses have given substantial testimony bearing on the issues, to which the jury might, in the proper exercise of its functions, give credit, it is error for the court to direct a verdict in opposition to such testimony on the ground that the witnesses are unworthy of belief. Caldwell v. Hodges, 18 Tenn App., 355, 370, 77 S. W. (2d), 817, and other cases therein cited. The eighteenth assignment is overruled.

The nineteenth assignment relates to the first trial of the cause, and has been heretofore overruled.

The twentieth assignment of error is that: "The evidence

fails to show that the plaintiff suffered any special damages or inconveniences that are not likewise suffered by the public at large."

Without conceding that the phrase "the evidence fails to show" is the equivalent of the phrase "there is *no evidence* which shows," we are of the opinion that there is evidence that there was a depreciation in the rental value of plaintiff's farm, particularly his pasture lands, which constituted "special damages" to plaintiff's property "not likewise suffered by the public at large." The twentieth assignment is overruled.

The twenty-first (and last) assignment is that: "The Court erred in permitting witnesses to testify as to the condition of Piney Creek at the septic tank located on H. T. Cowan's property, when the plaintiff's property was located over three-fourths of a mile below the said septic tank and which testimony does not describe, nor purport to describe, the condition of the plaintiff's property, and such testimony could only tend to confuse and prejudice the jury."

Manifestly this assignment does not conform to the rule hereinbefore stated, that specifications of alleged errors in the admission of evidence shall quote the full substance of the evidence admitted, with citation of record where the evidence and ruling may be found. Neither in the assignment nor in the brief offered in support of this assignment are there any citations to the record where the evidence and rulings thus complained of may be found.

Moreover, we are of the opinion that evidence of the general description contained in this assignment of error was competent for the reasons hereinbefore stated in the disposition of the ninth and tenth assignments of error. The twenty-first assignment is overruled.

We have endeavored to respond to all the assignments of error. We have not considered it necessary to extend this written opinion by stating and reviewing herein the evidence of the many witnesses contained in this voluminous record. We find that there was material evidence to take the case to the jury, and, if so, there was sufficient evidence to support the verdict.

It is not within the province of this court to ascertain whether or not the verdict is supported by the preponderance of the evidence, for conflicts of testimony merely present issues for the jury, and it would serve no useful purpose to review all the evidence in this cause. The function of this court in jury cases is not to make findings of fact, but merely to ascertain whether or not there was evidence which required the submission of the issues to the jury, and (if the case was submitted to a jury) whether or not there was sufficient evidence to support the verdict. An assignment in this court that the trial court erred in overruling a motion for a directed verdict, or an assignment that there was no evidence to support the verdict of the jury, presents a question of law, and not an

issue of fact. Section 10620 of the Code, requiring the Court of Appeals to file written findings of fact, has no application to a case tried by a jury. Caldwell v. Hodges, supra, 18 Tenn. App., 355, at pages 369, 370, 77 S. W. (2d), 817, and cases there cited.

It results that the judgment of the circuit court is affirmed, and judgment will be entered here in favor of the plaintiff J. W. Stephens and against the defendant town of Dickson for $100, with interest thereon from the date of the final overrulement of the motion for a new trial below (December 9, 1933), and for the costs of the cause accrued in the circuit court.

The costs of the appeal will be adjudged against the defendant town of Dickson and the surety on its appeal bond.

Crownover and DeWitt, JJ., concur.