## WOLFE v. WILLIAMS, et al.

Western Section, July 11, 1925.

Certiorari denied by Supreme Court December 12, 1925.

1. **Wills. Lost will presumed destroyed or revoked by testator, and burden to establish contrary is on one seeking to establish such will.**
   When will cannot be found after death of testator, there is a strong presumption that it was destroyed or revoked by the testator himself, and one seeking to establish a lost will has the burden of overcoming that presumption by proof.

2. **Wills. Verdict of jury setting up lost will, approved by chancellor if supported by any material evidence is not subject to review.**
   The verdict of a jury setting up a lost will and approved by chancellor by denying a new trial, in view of Shannon's Code, section 6286, will be given same force as in an action at law and will be reviewed only to determine if there is material evidence to support the verdict.

3. **Will. Proof to establish lost will must be clear, cogent, and convincing.**
   In suit to set up lost will, complainant must make out case by clear, cogent, and convincing proof, and an instruction to jury that this degree of proof is required fully meets the requirements of law.

4. **Wills. Verdict cannot be said to be unsupported by clear, cogent, and convincing testimony because evidence was conflicting.**
   In suit to establish lost will, jury must determine what testimony it will accept as true and what it will reject as false, and verdict cannot be said to be unsupported by clear, cogent, and convincing evidence merely because testimony was in sharp and irreconcilable conflict.

5. **Wills. Evidence held to establish lost will.**
   Evidence of strong mutual affection between testator and stepdaughter, who was principal beneficiary of his will, and circumstances surrounding mysterious disappearance of instrument held to sustain verdict establishing lost will.

6. **Wills. Appellate court will not review jury's rejection of testimony.**

Appellate court, in reviewing verdict establishing lost will, cannot review action of jury in rejecting defendant's testimony, but can only determine whether, after rejecting defendant's proof so far as in conflict with that of complainant, the evidence is sufficient to overcome presumption of revocation.

7. **Wills. Presumption of revocation rebutted by facts.**

The presumption of revocation from disappearance of testator's will is met and rebutted by proof of facts and circumstances which make it impossible for jury to believe that testator destroyed the will or intended to revoke it.

8. **Wills. Errors in verdict establishing lost will correctible only as errors in actions at law.**

In view of Shannon's Code, section 4888, issues of fact in suit to establish a lost will tried by a jury must be reviewed as a jury case, and errors must be corrected, if at all, as in actions at law.

9. **Wills. Conflicting evidence not sufficient to cause appellate court to set aside judgment establishing lost will.**

Chancellor hearing a suit to establish a lost will may set the verdict aside and grant a new trial because not satisfied that it is supported by conflicting evidence, but after chancellor has refused to set it aside the appellate court cannot do so.

10. **Wills. Presumption that testator did not intend intestacy may be considered to rebut presumption of revocation from ftilure to find will.**

In a suit to establish a lost will, the presumption that testator did not intend intestacy may be. considered with facts and circumstances tending to rebut presumption of revocation from disappearance of testator's will.

11. **Will. In suit to establish lost will, it is not necessary to prove any one destroyed it.**

In suit to establish a lost will, complainant need not prove that any one destroyed testator's will, and the presumption that one of testator's heirs was innocent of such act does not enter into case.

Appeal from Chancery Court, Shelby County; Hon. Israel H. Peres, Chancellor.

Lowell Taylor, of Memphis, for appellants.

Randolph and Randolph, of Memphis, for appellee.

HEISKELL, J. This is a suit to set up an alleged lost will of. C. S. Williams, who died on the 6th day of September, 1923.

The plaintiff is the stepdaughter of the deceased, of no blood kin to him, being the child of his second wife, who died in February, 1920. The deceased had no child by either his first or second marriage.

The defendants, except Henry Slaughter, are the brothers and sisters of the deceased and would inherit his estate as heirs if he died intestate.

The bill alleges that C. S. Williams married complainant's mother on November 27, 1916, when complainant was 14 years of age, and she resided with them and was so residing at the time of her mother's death, in 1920, and that thereafter she continued to reside with C. S. Williams, as his daughter, as long as·C. S. Williams lived.

That on or about the —— day of July, 1920, C. S. Williams executed in due form his last will, at Waynesville, N. C. That shortly after its execution said will was delivered to complainant, who kept it in her trunk, until a few months before she and said C. S. Williams left Memphis for Waynesville in August, 1923, when she placed said will in the desk of C. S. Williams. That when she returned to Memphis, after the death of C. S. Williams, the will could not be found. The bill also sets up the contents of said will, and asks that it be decreed to be the last will and testament of C. S. Williams and certified to the probate court to be recorded as such. Complainant demands a jury.

The defendants answer and say they know nothing of the execution of a will in 1920, and therefore deny that C. S. Williams executed such a will and deny all the allegations of the bill in regard to said will, and deny that C. S. Williams, at the time of his death, left any will whatever.

The case was tried by the chancellor with a jury. Three issues of fact were submitted to the jury which, with the answers thereto, are as follows:

"1. Did C. S. Williams execute a will in Waynesville, N. C., during July, 1920?

"Answer: Yes.

"2. Was that will in existence and unrevoked at the time of his death?

"Answer: Yes.

"3. What were the contents of such will?

"We find the contents of the will to be as follows:

"That G. W. Williams is named administrator of this will.

"He left to his brother, G. W. Williams, his interest in the property in Court Street Bottoms.

"He left to his brother, Ernest Williams, his property in Washington Street Bottoms.

"He left to his sister, Mrs. Sallie McGuire, a vacant lot on Court Street.

"He left to his sister, Mrs. Annie Buchannan, a vacant lot in rear of the home place, 57 North Tucker Street.

"He left to Henry Slaughter a life interest in the property in which Slaughter is now living, between Barksdale and Mc-Lean. He also left Henry Slaughter a lot in Orange Mound and a horse and buggy.

"He left to his stepdaughter, Margaret Wolfe, the home place at 57 North Tucker; the house and lot at 1912 Court Street, the property occupied by Henry Slaughter at his death, and all of his other property, both real and personal, including his life insurance.

"All of the above property is located in Shelby county, Tennessee.

"He directs that G. W. Williams be made guardian of Miss Margaret Wolfe, providing for her needs and education. In the event G. W. Williams does not, for any reason, act as administrator then the Bank of Commerce & Trust Company is to administer the estate."

A motion for a new trial was filed and argued before the court. After due consideration of said motion, it was overruled, and final decree entered on the verdict establishing the will.

The case is now before this court on the defendants' appeal in the nature of a writ of error.

The assignments of error are twelve in number, with many subdivisions, covering between seven and eight printed pages. The objections to the action of the lower court material to be noticed are these:

There is no evidence to support the finding of the jury that C. S. Williams left a will unrevoked at the time of his death.

There is no evidence sufficient to rebut the presumption that C. S. Williams destroyed the North Carolina will of 1920 animo revocandi.

There is no proof to show that said will was lost or destroyed before the death of C. S. Williams, contrary to his wishes, or that same was lost or destroyed after his death; or if there is any evidence that such will was in existence at his death and was thereafter so lost, suppressed, or destroyed, the proof is not clear, cogent, and convincing.

The verdict of the jury is contrary to the overwhelming weight of the evidence.

The verdict is contrary to the charge of the court in that the court charged the jury that the proof that the will was in existence, unrevoked, at the death of C. S. Williams, must be clear, cogent, and convincing; and the jury found as they did when the preponderance of proof was to the contrary.

The court erred in not charging the jury, as requested, that the evidence offered by plaintiff to show that Ernest Williams destroyed said will was insufficient to establish that fact.

That the evidence was not sufficient to support the finding as to the contents of the will, but that the weight of the testimony is to the effect that after specific devises that the will gave to complainant only the property that he acquired or made after that will was made.

That the contents of the will as found by the jury are not specific and definite enough to constitute a will.

There can be no controversy as to the correctness of the principal propositions of law relied on by defendants.

"When a will cannot be found, after the death of a decedent, there is a strong presumption that it was destroyed or revoked by the decedent himself, and this presumption stands in the place of positive proof. One who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate-proof."

"The burden rests upon the plaintiff to show that the North Carolina will was unrevoked at the time of C. S. Williams' death."

The chancellor so charged the jury. The principal question is: What is the effect of the verdict in favor of plaintiff rendered under the charge of the chancellor stating the law according to the contention of defendants? The jury was told that the burden was on the plaintiff to overcome the presumption, stated, by adequate proof, and that in order to be adequate the proof must be clear, cogent, and convincing. Then on the motion for a new trial the chancellor who had seen and heard the witnesses, along with the jury, said in effect that, applying the test given to the jury, he was not dissatisfied with the verdict. Can this court now try the case de novo, weighing the evidence as if the chancellor had heard the case without a jury and not on oral testimony, or must this court give the ordinary effect to the verdict and consider merely whether or not there is evidence to support the verdict?

"In a case by jury in the chancery court the findings of the jury shall have the same force and effect, and the courts shall have the same power and control of the findings as on such trials at law." Section 6286, Thompson's-Shannon's Code; section 6286, Shannon's Annotated Code.

This Code provision has full force and effect in a suit to set up a lost will. Morris v. Swaney, 7 Heisk., 591.

On the appeal of a suit brought to set up a lost will, the appellate court will review the facts only for the purpose of ascertaining whether there is any material evidence to support the verdict of the jury concurred in by the chancellor. Morris v. Swaney, 7 Heisk., 591.

In a suit to set up a lost will, the complainant must make out the case by "clear, cogent and convincing proof."

Where the judge charges the jury that this degree of proof is required, the requirements of law have been fully met. Morris v. Swaney, 7 Heisk., 591.

Defendants seek to break the force of Morris v. Swaney by the unreported case of McDonald v. McDonald. This case, however, was reversed on the ground that the chancellor told the jury that in order to find the issue that the children were tenants in common with their mother, it was only necessary that they find that the

testimony warranted the finding by a preponderance of the evidence, when the same quantum of proof was necessary as was required to establish a resulting trust.

If the chancellor had charged that the proof must be clear, cogent, and convincing, there would have been no error.

It is true there is language in this opinion broad enough to lay down the rule that calling for a jury in a case of this sort, and the verdict of a jury, does not make the case on review in an appellate court at all different from a case tried by a chancellor without a jury, but it seems to us this is dicta. Besides, Morris v. Swaney is not referred to, and an unreported case of this character cannot be taken as overruling a case of long standing, like Morris v. Swaney. The most that can be said, taking the cases together, is that the appellate court will look to see that the verdict is supported by some clear, cogent, and convincing evidence; or, at most, that the verdict will not be disturbed unless it is manifestly contrary to the great preponderance of the evidence.

The jury, having the witnesses before it, has the duty to reconcile the testimony, if possible; if it cannot, then to determine what testimony it will accept as true and what it will reject as false. If, then, the testimony for complainant is clear, cogent, and convincing, taken by itself, and the testimony for the defendant is clear, cogent, and convincing taken by itself, but the evidence for complainant and that for defendant are in irreconcilable conflict, then the jury must decide which they will reject, and if they decide to believe the witnesses for complainant and not those of the defendant, it cannot be said the evidence for complainant is not sufficient. If the testimony for defendant be rejected, it cannot weaken the testimony of the complainant by being subtracted from it.

If we take the testimony of complainant and her witnesses with such of the proof offered on behalf of defendants as is not in conflict therewith, it establishes this state of facts and tells this story: C. S. Williams married the mother of Margaret Wolfe in 1916, when she (Margaret) was about fourteen years of age, and she resided with him from that time as long as he lived. When the mother was on her deathbed, he sought and obtained from her permission to take care of Margaret, and he did care for her like a father, was very fond of her, and she of him, they were constant companions, and the relation between them was that of father and daughter, established by affection, not by kinship. About the —— day of July, 1920, C. S. Williams executed a will at Waynesville, N. C., the terms of which are set out in the decree entered upon the verdict of the jury. By this will he left some property to his two brothers and his two sisters, the defendants, but Margaret was the principal beneficiary under the residuary clause.

The valid and regular execution of this will is admitted by the defendants. It was delivered first to Mrs. W. H. Liner, the aunt of complainant; afterwards, by direction of the testator, it was delivered to Margaret, who kept it in her trunk until about four months before the death of C. S. Williams, when she placed it in his desk.

Complainant and her stepfather left Memphis during the latter part of August, 1923, and went to visit her relatives at Waynesville, N. C., leaving said will in the desk of the testator in his residence 57 Tucker Street, city of Memphis. C. S. Williams died in Waynesville, and Margaret telegraphed his relatives to that effect. When she returned to Memphis, the will could not be found.

This evidence, still omitting for the present the conflicting proof of defendants, shows the close and affectionate relationship between C. S. Williams and Margaret unbroken and undisturbed, except a few disagreements, a slight irritation on his part on one occasion not long before his death, such temporary clashes as may occur in the most affectionate relationships of love or friendship, without danger to the relation. He made this will mainly for her benefit in 1920; his feelings toward her remained the same down to the time of his death. It seems incredible that he would have destroyed this will for the purpose of cutting her off absolutely. If he died intestate, she, not being related in blood to him, would take nothing from his estate. This being so, we can well see how the jury would find it more difficult to believe that he destroyed this will than that it was lost or destroyed in some other way. We can well imagine the jury applying the language of the chancellor's charge and saying: "We do not believe, we cannot believe, he destroyed this will, or that he intended for it to be destroyed; the evidence is clear, cogent, and convincing to us that he did not destroy it."

If the execution of the will being established beyond controversy and the proof and circumstances convince the mind that the decedent could not have destroyed it, is not this sufficient to overcome the natural presumption which ordinarily obtains that he, rather than some one else, did destroy the will?

Unquestionably the presumption, arising from the fact that no will was found after the death of C. S. Williams, is that he destroyed the will with the intention of revoking it, as he had a right to do. Undoubtedly the jury, in order to find for complainant, should have been convinced that the evidence in favor of complainant was sufficient to outweight the evidence of defendants with this presumption added. It is manifest that the jury reached the conclusion they did because they did not believe the testimony of the witnesses for the defendants. We cannot review the action of

the jury in this regard. The most that can be required to support the verdict is that after rejecting defendants' proof so far as in conflict with the complainant's proof, the evidence be sufficient to overcome the presumption that C. S. Williams revoked the will. If the evidence creates a situation which convinces the jury that it is impossible to believe that C. S. Williams destroyed the will or intended to revoke it, and that it is possible to believe that he did not revoke it, notwithstanding the presumption to the contrary, then the burden is met and the verdict must stand.

Counsel for defendants argue this case as if it were before this court on a broad appeal from the decision of a chancellor rendered after a hearing on depositions. Instead, it is before us to be reviewed as a jury case, and errors must be corrected, if at all, as errors are corrected in actions at law. Code, section 4888.

We cannot eliminate the element of the jury finding of facts, and if we could there would remain the hearing on oral testimony. The chancellor might have heard it on depositions, if a jury had not been called for. In that case it would be tried in this court de novo and this court could pass upon the weight of the evidence. The rule cannot be the same when the case is tried below on oral testimony, and especially when there is a finding of all the determinative facts by a jury. It is not necessary for this court to express an opinion as to the result if the case were before us on appeal from the decree of the chancellor who had heard the case on written evidence, without seeing the witnesses. We can only look at the case as determined by the jury.

Counsel for defendants argue cogently, but not convincingly in their brief, because they are arguing on an unsound basis. They insist on the acceptance of the testimony of the defendants and their witnesses where in irreconcilable conflict with that for complainant, although it is manifest that the jury rejected this conflicting evidence. As it is the province of the jury to judge of the weight of the evidence, and as it is the duty of the jury to reconcile the conflicting testimony, if possible, if not, then to decide which they will accept and which they will reject, which they will believe and which they will refuse to believe, when they have done this, we cannot reverse their action and substitute the testimony which the jury rejected as untrue for that which they accepted as true. If the chancellor who sat through this case with the jury, and saw and heard the witnesses, had not been satisfied with the verdict, he might have granted a new trial, on the ground contended for by counsel for the defendants. The chancellor refused to set aside the verdict and this court cannot do it.

In Morris v. Swaney, 7 Heisk., 591, the lost will had been set up by a jury trial in the chancery court. The defendants assigned as error and argued in the Supreme Court that the evidence great-

ly preponderated against the verdict. In overruling this assignment, the court said:

"The question as to the credibility of witnesses is peculiarly one for a jury. The question is, whether this verdict is sufficiently sustained by evidence. In many of the cases in our court upon this subject it has been said that this court will not reverse upon the facts, if there is evidence. In some it is said if there is any evidence to support the verdict. In a more recent case the rule is said to be, that this court will only reverse upon the facts of the case when there is a great preponderance of evidence against the verdict found by the jury, so that we can see clearly that the judgment of the law upon all the facts shown in the evidence is not that which the jury have found. Nance v. Hanly, 1 Heisk., 177.

"Do the facts in this record greatly preponderate against the verdict?

"If the jury were authorized to take the testimony of complainants' witnesses as true, with the corroborating circumstances, all of which we have not enumerated, then they might well have found the verdict they did. Without examining in detail the testimony of the defendants, it will be sufficient to say, that it does not greatly preponderate against the verdict.

"We cannot say that the jury were wrong in giving credence to the testimony upon which their verdict is founded. The jury were told that if the will was proven to have been in the possession of Swaney, the testator, the law presumes, as it was not found after his death, that it was revoked; but that if the facts and circumstances satisfied them that it was not revoked, they would so find. Without reviewing the evidence upon the subject, it will be sufficient . . . to sustain the finding of the jury in this respect.

"We find no material errors of law in the record. As to the facts, the parties have, under the right given by the law, appealed to a jury of the country; and, under the rules applicable in such cases, we do not feel authorized to set their verdict aside.

Morris v. Swaney, 7 Heisk., 602, 603."

The language of this opinion is peculiarly applicable to the present case. We cannot say the jury was wrong in rejecting the evidence in behalf of defendants. We cannot say that defendants' evidence preponderates. We cannot say the chancellor ought to have been dissatisfied with the verdict of the jury.

If the jury had believed the testimony of defendants' witnesses, they would not have believed the witnesses for complainant and would have found for the defendants. Complainant would then have been bound by the verdict. As it is, if this verdict should be

given no greater weight than the decision of a chancellor without a jury, we still think, as between the conflicting testimony, that for the complainant carries the greater weight and is the more difficult to be rejected. Testimony which the jury has a right to reject and does reject cannot be said to preponderate.

We have discussed the case as though this court was called upon to weigh the evidence to determine whether it greatly preponderates against the verdict, but this is not the law. In Railway Co. v. Mahoney, 89 Tenn., 332, 15 S. W., 656:

"This duty imposed upon him [the trial judge] is all the more imperative because of the rule of this court that after a verdict which has met the approval of the circuit judge, this court will not reverse if there is any evidence to sustain it. See cases cited, and Jones v. Jennings, 10 Hum., 428; Dodge v. Brittain, Meigs., 85; Pettitt v. Pettitt, 4 Hum., 191; Walker v. Galbreath, 3 Head., 315.

"And this always has been the rule, both before and since the case of Nance v. Haney, 1 Heis., 177, although in that case the judge delivering the opinion criticized the language used on this point in some of the cases cited, and used instead the terms 'great preponderance of evidence against the verdict so that the court can see clearly that the judgment of the law upon all the facts shown in the evidence is not that which the jury has found.' This language as well as that in other cases was quoted, and no distinction drawn between the cases in Morris v. Swaney, 7 Heis., 602.

"We have since repeatedly held that there was no distinction in cases where there was such a great or overwhelming preponderance of evidence against a verdict that the court could clearly see that it was erroneous, and one where there was not any legitimate evidence to sustain it. For if there is legitimate evidence to sustain it, passed upon by the jury and circuit judge, we cannot clearly see that the verdict is wrong. We have therefore held that no difference in language used has made a difference in the rule, which ever was, and still remains, that this court will not disturb such verdict if there is any legitimate evidence to sustain it. [Massengill v. Shadden] 1 Heis., 359; [State Ins. Co. of Nashville v. Hughes] 10 Lea, 470; [Turner v. Turner, 85 Tenn.,] 1 Pickle, 389 [3 S. W., 121]."

The rule therefore, applicable to the present case, is that the court will not disturb the verdict because it can be seen that there is some clear, cogent, and convincing evidence to sustain the verdict. This being so, it would serve no useful purpose to enter into a long discussion of the testimony of the several witnesses to show the conflicts, the strength and weakness, the credibility and incredibility of the several witnesses—in short, to weigh the evidence.

C. S. Williams evidently loved Margaret's mother very dearly and was greatly grieved by her death. After that the loneliness of his life was relieved mainly by Margaret, and all the sentiment and effection he had cherished for the mother was bestowed on the daughter, and the daughter had before her mother's death won affection on her own account and continued to become more and more to him. The case of Brown v. Brown, 10 Yerg., 84, discussed at length and with great force the overwhelming power of the presumption in that case that the deceased did not want to die intestate. The argument applies here. It is unbelievable here, as there, that the deceased should have desired or been willing to die intestate when it meant to cut Margaret off without a cent.

The brief for defendants makes an argument based on the presumption of innocence of Ernest Williams. It was not necessary for the complainant to prove that any one destroyed the North Carolina will. It was only necessary to show that it was unrevoked at the death of C. S. Williams. This was all that was left to the jury, and it was unnecessary to overcome the presumption of innocence of any one.

The jury was justified in finding the contents of the will as it did. All the assignments of error are overruled, and the decree is affirmed. Defendants and their sureties on their appeal bond will pay the costs of the appeal.

Owen and Clark, JJ., concur.