HAMMER v. AMERICAN UNITED LIFE INS. CO.—141 S. W. (2d) 501.

Eastern Section. March 5, 1940.

Petition for Certiorari Denied by Supreme Court, May 5, 1940.

120

Cates, Smith & Long, of Knoxville, for appellant.

Hodges & Doughty and Kennerly & Key, all of Knoxville, for appellee.

PORTRUM, J. This is a suit by the beneficiary upon a policy of insurance allegedly issued and delivered to the insured in the amount of $1000. The defense is that the policy "shall not take effect until payment of the first premium and delivery of the policy during my (insured's) lifetime and while in good health," and that this provi-

sion of the contract was not complied with. This defense is met by an insistence that the insured was in good health and had paid the premium at the date of the issuance of the policy, and while in fact the policy was not manually delivered during the sound health of the insured after the issuance, there was a constructive delivery at the date of the issuance and that the policy was forwarded to the agent for an unconditional delivery. If this insistence is established, the policy was in force and the complainant is entitled to a recovery.

The case was tried in the lower court by a jury; the theory and the facts as established by the defendant will first be stated, followed by the theory of the complainant and the facts upon which she attempts to raise a conflict in the evidence, justifying a submission of the issues to the jury.

Mr. Earl Layman, an attorney at the Knoxville Bar, was also engaged in the business of selling life insurance, and to facilitate this business he had made arrangements with the Southern Industrial Bank of Knoxville to make loans to applicants for insurance whereby the applicant would pay 6% for the loan and the agent would pay an additional 4% and in this way applicants for insurance were enabled to procure a loan at the rate of 6%. The agent did not restrict the loan to an amount necessary to pay the premiums, but permitted a loan of a larger amount, the applicant receiving the difference.

In the summer of 1936 the agent solicited James W. Hammer to take a policy of insurance upon his life. He agreed to assist him in obtaining a loan from the Southern Industrial Bank out of which to pay the first premium and Hammer agreed to and applied for a policy of insurance of $1,000 with waiver of premium and double indemnity; the annual premium upon the policy, exclusive of the double indemnity and waiver of premium, was the sum of $54.83. On the same day, July 21, 1936, he applied to and obtained a loan from the Southern Industrial Bank in the sum of $144, and Layman testifies they agreed Hammer would write a check payable to the agent in the sum of $50.32, and that he would hold this check until the policy was issued and delivered, after the insured had had an opportunity to inspect and accept the policy as written, and if accepted he would apply the check upon the payment of the premium. But if the policy was not issued that he would apply the check as payment upon the note held by the bank against Hammer. And with this understanding the check was issued and delivered to Layman and the policy applied for upon written application of Hammer.

Hammer was a policeman in the City of Knoxville and Layman states that he told him because of his occupation he might be rated up and the company might not issue the policy as applied for without an increase in the amount of the premium. The application was received at the home office of the company in Indianapolis, Indiana, and was not accepted as written. The double indemnity applied for was

denied because of the applicant's hazardous occupation, and $3.75 extra per thousand was added to the rate for the same reason, and the rate for waiver of premiums at one and a half times the regular rate was inserted on that portion of the application reserved for the home office endorsements. Upon the application as modified at the home office the company wrote a policy of insurance which was signed on the 4th day of August, 1936. This policy was sent to the agent for delivery upon the payment of the premium as called for in the face of the policy, of $59.18.

Upon the receipt of the policy the agent called upon the insured and attempted to deliver it and to collect an additional premium charge of $7. The agent states that he called upon the insured at three different times attempting to induce him to accept the policy and pay the additional premium, but that Hammer deferred the matter, commenting upon the extra premium. Thereafter the agent read in the paper that on August 28, 1936, Hammer was injured while attempting to make an arrest and was confined in the hospital. He then communicated with the company and was directed to return the policy to the home office for cancellation. After the injury Hammer was anxious to accept the policy and it was not thought that his injury was serious. His wife called upon the agent to accept the policy, but it could not be delivered while the insured was not in sound health. The agent agreed that she might apply for a *reinstatement* (it is insisted that this is a confession by the agent that the policy was constructively delivered), or reissued upon another medical examination, and the agent made application to the company for blanks for this examination.

Upon this application by the agent the blanks were forwarded directly from the company to Hammer, the applicant, but his attending physicians were unable to or did not fill out the blanks. In January 1937 Layman testified that Mrs. Hammer came to his office again and told him that Mr. Hammer was in Beverly Hills Sanitarium and seriously ill. He told her that it was impossible to get the policy reinstated because the doctor would not fill out the health certificate and he desired to return the premium check or apply it as a credit upon the note. That she told him she was badly in need of money, and he turned over the check to her. He states that he had been holding a $23 check, thinking it the Hammer check, and that he had through error cashed the $50 check, and he turned over the $23 check to Mrs. Hammer. Much is made of this error, it being insisted that when the agent cashed the $50 check that this was a ratification by the company and a recognition of the issuance and delivery of the policy. This depends upon whether the agent held the check as the property of the company and as a payment of the premium. If he did it made no difference whether the agent cashed it or didn't cash it, and if he did not hold it as the property of the company then his cashing it

was a matter between him and the owner, Hammer, of the check. We will make no further reference to error in reference to the check.

The company was notified by registered mail on July 7, 1937, of the death of the insured, James W. Hammer, and demand was made for the payment of the policy. Payment was declined and suit was instituted on July 30, 1937.

It is the first insistence of the complainant that the first premium was paid by the issuance of the check and that since the policy was issued while the insured was in good health, and was returned to the agent for an unconditional delivery and received by the agent while the insured was in good health, the policy took effect as of the date of its issuance, same being a constructive delivery. It is insisted that the jury was justified in drawing the conclusion that the issuance of the check was a payment of the first premium, notwithstanding the direct testimony of the agent for the reason that the agent was impeached in that his testimony as to other matters testified to was conflicting, justifying the jury in disregarding this testimony. And that there were other facts and circumstances shown justifying the jury in the holding that the issuance and acceptance of the check was a payment of the premium to the agent on behalf of the company.

And the second insistence is that the application was accepted as made and the policy was issued upon the application as signed by the applicant. Mrs. Hammer testifies that she went to the office of the agent in October 1936, and that she was shown the policy which was then in the hands of the agent, and that she saw it and was told by the agent that it had been issued as applied for by the insured. It is insisted that this establishes the contents of the destroyed instrument and makes an issue for the jury, notwithstanding that the company proved by the officer, or agent in the office, writing the policy, that the application as written was not accepted because of the occupation of the applicant, and that the rate was increased and the double indemnity applied for was denied and that a policy upon the application as amended by the company was written and forwarded to the agent for delivery upon the payment of the premium as called for in the policy. The first sheet containing the general provision of the contract was preserved, together with the original application and is filed in the cause. The printed portions of the contract designating general provisions were destroyed because of their bulk in filing, and other like general provisions were supplied and when taken with a portion of the original contract preserved were filed as representing the contract as executed. Some circumstantial evidence is advanced as tending to discredit this copy and the original front sheet for the purpose of discrediting the witness who identifies the file. The theory is that if the company's evidence is discredited, then we have only the evidence of Mrs. Hammer who testifies that she saw the contract and that it was issued as applied for originally by her husband. This

establishes the contents of the written instrument justifying the jury in returning a verdict in her favor. Assuming, for the time being, that she establishes the contents of a missing instrument, then its validity rests upon a delivery, and it is conceded it was never manually delivered, so the issue is whether or not it was constructively delivered.

Returning to the complainant's first insistence. Has she or can she under the state of the record overcome the positive and uncontradicted testimony of the agent that the check representing the first premium was turned over to him to hold for the applicant until the policy was issued and delivered? And is she in a position to show by testimony that the first premium was paid and not held by the agent for the applicant as he testifies? The application is a part of the contract, made so by statute, and it bears the signature of the applicant, is in the record, and is not attacked. Question 9, in this application, and answer read:

"9. Has the premium on the insurance hereby applied for been paid? No. If so, state amount paid. $————.''

 At the bottom of the application appearing in large type, italicized word in writing, appears the following: "I have paid $ *nothing* to agent as a payment on this policy.'' So, according to the express terms of the contract, the applicant had not paid the first premium or any part of it, and since the cause of action is based upon the contract the complainant is bound by its terms. Parol evidence, much less circumstantial evidence, is not competent to vary the terms of a written instrument. This is the substantive rule of law, and the only way this evidence can become available is upon pleading for a reformation of the contract, and no reformation is applied for. There was no competent evidence to submit to the jury to impeach the terms of the contract, under the state of the pleadings, and in the absence of a showing that the premium was paid there could be no constructive delivery of the policy. Therefore, the contract corroborates the testimony of the agent and establishes the terms of the agreement.

This contract provides in express terms for a constructive delivery when certain conditions have been complied with. The provision is as follows: "I hereby expressly agree that the policy hereby applied for shall not take effect until payment of the first premium and delivery of the policy during my lifetime and while in good health, provided, that if the premium or an authorized installment thereof is paid to the agent with this application and if receipt therefor in writing is issued by such agent, and if such application is approved in the form and amount applied for during applicant's lifetime and while such applicant is in good health, the policy will be in force for the amount approved by the company from the date of final approval of the same for the length of time and no longer than the payment will pay for at the regular premium rate on the policy issued.''

This provision was not complied with nor intended to be complied with. There was no premium receipt for the policy issued and the application says that none was paid. There is no insistence that the agent issued a premium receipt. It is insisted that the policy was issued as applied for, but if it was then there could be no constructive delivery under the terms of the contract or as a matter of law. It is the rule that the offer must be accepted as made. Minneapolis & St. Louis Railway Co. v. Columbus Rolling Mill Co., 119 U. S., 149, 7 S. Ct., 168, 30 L. Ed., 376.

The complainant denies that the company declined to accept the application as made, and she attempts to set up the terms of a missing instrument and the enforcement of the same by a decree upon her testimony that she saw the contract while in the hands of the agent and it conformed to the application. And that the testimony and documentary evidence to the contrary made that an issue for the jury. The quantum of evidence required in the establishment of a lost paper, which is the basis of the suit, takes the case out of the any evidence rule to the extent that there must be some clear, cogent, and convincing evidence of the contents of the instrument before the jury's verdict is binding upon the court. This is an ancient rule of evidence growing out of long experience. Were it otherwise, the party could destroy or mislay the written evidence of a transaction, and then establish the terms of the agreement by parol, and his testimony would carry the case to the jury notwithstanding numerous documents establishing a contrary content. In this case an essential part of the original contract is introduced and her testimony that the contract was issued as applied for overcomes it. Under such circumstances it is necessary that the courts conform to the rule and require some clear, convincing and cogent evidence of the contents of the instrument sued on. Warner v. Maroney, 16 Tenn. App., 78, 66 S. W. (2d), 244; Wolfe v. Williams, 1 Tenn. App., 441.

The complainant's evidence that she saw the policy and that it was written as applied for in the application is not convincing. She was not in the office for the purpose of examining the contract but to obtain the policy. And her testimony that the agent told her that the policy was written as applied for in view of all the uncontradicted proof and admitted circumstances is not convincing in view of the testimony of the agent which is contrary to her insistence. She was not entitled to go to the jury upon this issue.

On October 9, 1936, the company sent the insured a form letter of inquiry, a material part of which is as follows:

"We recently mailed you your policy No. ——— for $1,000 to our agent who secured your application. We wish to again acknowledge our appreciation of your application for insurance with our company. . . .

"In order that we may complete our records, will you please answer the questions at the bottom of this letter and mail it back to our company in the enclosed envelope, which requires no postage. (Questions follow):

"1. On what day was the policy delivered to you? ————

"2. Has the first payment been made on the policy? ————

"3. If the entire first payment has not been made, what amount have you paid?'————."

These questions were never answered.

It is insisted that this letter is an admission of the delivery of the policy, and that the company is estopped to deny the delivery. The legal effect and the construction of the letter is a question for the court and not the jury, there being no issue of fact raised upon its contents nor its receipt. The court is of the opinion that it is but a letter of inquiry to determine if the policy had in fact been delivered by the agent, and if the premium or part thereof had been paid. This inquiry protected both the company and the insured. If the policy had been delivered and the premium paid and not accounted for, it was to the interest of the insured that the question of whether the premium had been paid be determined then. The letter did not have the effect of an acknowledged delivery of a policy that was not deliverable under its terms.

The court is of the opinion that there is no evidence of a constructive delivery of this policy and that the trial judge should have directed the jury to return the verdict in favor of the defendant. The verdict is now directed, and the case is ordered dismissed with costs.

Ailor and McAmis, JJ., concur.