GAMBILL v. HOGAN. No. 2—207 S. W. (2d) 356.

Eastern Section.   May 6, 1947.

Petition for Certiorari denied by Supreme Court, November 29, 1947.

466

Clyde W. Key, Ross H. Williams and Thurman Ailor all of Knoxville, for appellant.

Jennings, O'Neil & Jarvis, of Knoxville, for appellee.

McAMIS, J. Lida Bell Gambill, as administratrix of the estate of Mrs. Julia Butcher, instituted this suit to recover the sum $5,990 alleged to be due the intestate's estate from the defendant Mrs. Achsa G. Hogan. The case was twice tried before the Chancellor and a jury on issues formulated to determine whether, as she claims, the defendant is entitled to retain the sum sued for as a gift causa mortis.

At the close of all the evidence at the first trial the administratrix moved the Court to withdraw the issues of fact from the jury and decree in her favor on the ground there was no evidence of the character required by law to sustain the alleged gift. This motion was overruled and the case submitted to the jury under a charge as to which there are no exceptions. The jury, being unable to agree, a mistrial was declared and, upon the motion of the administratrix for a new trial being overruled, she preserved and filed a wayside bill of exceptions. The case was again tried before the Chancellor and a jury and resulted in a verdict and decree sustaining defendant's right to the fund in controversy. The administratrix appeals and insists the Court erred in refusing to withdraw the issues from the jury and decree in her favor. Under the established practice

we review first the action of the court in refusing to withdraw the issues from the jury and decree in complainant's favor at the first trial. Barnes v. Noel, 131 Tenn. 126, 174 S. W. 276; Town of Dickson v. Stephens, 20 Tenn. App. 195, 199, 96 S. W. (2d) 201.

In so doing we are confined to the evidence introduced at the first trial and cannot consider evidence introduced at a subsequent trial though a part of the record on appeal. As will hereinafter appear, the single and decisive question for our determination is whether the testimony of Mrs. Dorothy West, the only witness offered by the donee to sustain the gift, in view of her relationship to the donee and under all the circumstances in the case, is sufficient to justify the action of the Chancellor in submitting issues of fact to the jury and refusing to decree in complainant's favor under all the evidence.

Mrs. Julia Butcher died at the age of 76 a few days after she was stricken at her home in Knoxville with a cerebral hemorrhage followed by partial paralysis. She was one of a large family of children all of whom predeceased her except her sister, the defendant Mrs. Achsa G. Hogan. Both Mrs. Butcher and Mrs. Hogan were childless but there were a number of nephews and nieces, children of deceased brothers and sisters, living at the time of Mrs. Butcher's death.

At the time of her death Mrs. Butcher was possessed of substantial real estate holdings and the fund in controversy which was found wrapped in a cloth bag. The sum, amounting to $5,990, was in bills of various denominations and was taken into defendant's possession, under the circumstances to be related, on the afternoon Mrs. Butcher was stricken.

██ Mrs. Butcher was found by a neighbor slumped in her chair in the hall of her home about 12:30 p. m. There is no dispute in the evidence that when discovered she was unconscious. She was placed in bed and relatives were notified. There is a sharp dispute in the evidence as to which of the relatives first appeared at the Butcher home. We shall not attempt to resolve this dispute but will take that view of the evidence most favorable to defendant in harmony with the findings of the jury. Suffice it to say that Mrs. Hogan arrived between 12:30 and 1 o'clock and several of the nieces and a nephew, Martin West, accompanied by his wife, the witness Mrs. Dorothy West, sometime near 1 o'clock. Mrs. Hogan was accompanied by Mrs. Long, an elderly lady who testified in her behalf. Before the arrival of any of these parties, Mrs. Butcher was attended by Mrs. Caldwell, Mrs. Skeen and Mrs. Wallace who became witnesses for the administratrix and whose testimony will be noticed. Dr. Copenhaver was called and arrived about 4 o'clock.

The evidence is undisputed that Mrs. Butcher was severly stricken and, as stated, that when discovered and placed in bed before the arrival of relatives she was unconscious. There is a sharp dispute as to whether she ever spoke following the hemorrhage. Martin West testified that when he entered the room and inquired as to her condition she replied: "I feel so bad." Mrs. Hogan and Mrs. Dorothy West, though admitting that she labored under great difficulty of speech and was practically reduced to the necessity of pointing to make known her wishes, say they were able to understand her when she attempted to talk. Mrs. West's testimony as to Mrs. Butcher's alleged statements concerning the gift to Mrs. Hogan will be hereinafter fully detailed.

Mrs. Caldwell, Mrs. Skeen and Mrs. Wallace testified that they were in the room practically all the time until after the Doctor came (which would include the time when Mrs. West says the gift was made) and that Mrs. Butcher was unconscious the entire time and never spoke while they were there.

Mrs. West testified that the statements made by Mrs. Butcher as to the gift were about twenty-five minutes after her arrival. This would have been about 1:30 and before Dr. Copenhaver arrived. Mrs. Long, who accompanied Mrs. Hogan to the Butcher home, testified that Mrs. Butcher appeared to know what was said to her; that she could not talk but did utter some words she was unable to understand; that she would point to her mouth and nod or shake her head.

In view of the jury's verdict, we accept this testimony though Mrs. Caldwell, Mrs. Skeen, Mrs. Wallace, all disinterested witnesses, and several of the nieces who, however, appear to have some interest in the case, all testified that they were in the room practically all of the time after Mrs. Butcher was placed in bed and that she was unable to speak, never uttered a single word and, in fact, was unconscious during the time the alleged statements as to the gift would have been made. Dr. Copenhaver was of opinion Mrs. Butcher was unconscious and unable to speak after she was stricken but admitted that it was possible that she was able to make herself understood and may have been conscious sufficiently to converse with her sister, Mrs. Hogan.

Fairly appraising defendant's evidence and viewing it in its most favorable light, considering it along with undisputed evidence, and rejecting all conflicting evidence offered by complainant, the jury had for its con-

sideration the claim of a gift by one who, within the hour, had suffered the shock of a severe cerebral hemorrhage, with partial paralysis, resulting in a period of temporary unconsciousness from which she had passed into a state of consciousness handicapped, however, with a grave impediment of speech which enabled her to speak only indistinctly and in a low voice and embarrassed and frustrated in her attempts to communicate her desires to the point she relied principally upon pointing her finger and shaking or nodding her head. With this sketch of the background, we come to a consideration of the testimony of Mrs. West as to the gift and the events which followed, noting at this point complainant's insistence that Mrs. West's testimony is so self-contradictory and incredible that it amounts to no evidence, or, at least, that it is not of the requisite probative force to sustain a gift causa mortis. We quote her entire testimony on this question:

"Q. Who was there at that time? A. Aunty Hogan and Mrs. Long and Bessie Kate Gambill were out on the front porch waiting for the Doctor to come, and while I was there Aunty Hogan was trying to make her sister more comfortable, asked if there was anything for her to do, and the best she could speak she said, 'Get my money and keep it.'

"Q. Was that all she said? A. She had told her to take it where she had left it before that, that she told her that day, and said, 'You keep it for yourself, if anything was to happen to her.'

"Q. Now a while ago you said your Aunt Mrs. Butcher said, 'Get my money and keep it,' those are the words I believe you said she said, 'Keep it if anything

should happen to me'. Now what else did she say? A. That is all she said then."

The last quotation is the testimony of Mrs. West given on cross-examination. On re-direct examination she testified:

"Q. Mrs. West . . . repeat as nearly as you can word for word what you heard Mrs. Butcher say to your Aunt there that day. A. Aunty Hogan asked her if she could do anything for her, and she looked up and said, 'Get my money and keep it,' that is exactly what she said while I was standing there."

At this point the court sustained an objection to another question and counsel for defendant then continued his re-direct examination:

"Q. Just want you to state to the jury all she said."

This question was objected to and was never answered. Counsel then continued re-direct examination as follows:

"Q. I want to know exactly what she said, and want to be clear about it, and want the jury to be clear on it.

"The Court: "Q. Did you finish the answer to that question? A. I merely said that was all that she said, but she did say, 'get my money and keep it for her from now on.' "

▆▆▆ The first statement "get my money and keep it," is clearly insufficient to establish a gift, for it is as consistent with a purpose on the part of the declarant that the money be held for her benefit as it is that it be held for the benefit of Mrs. Hogan. The rule is that all doubt must be resolved against the hypothesis of a gift. Balling v. Manhattan Sav. Bank & Trust Co., 110 Tenn. 288, 75 S. W. 1051; Chandler v. Roddy et al., 163 Tenn. 338, 350, 43 S. W. (2d) 397; O'Brien v. Waggoner et al.,

20 Tenn. App. 145, 96 S. W. (2d) 170. But the witness overcame this deficiency when she stated in response to a question by counsel for defendant that Mrs. Butcher also said, "you keep it for yourself, if anything was to happen to her." Her testimony on cross-examination was not materially different.

However, on re-direct examination as shown in the above-quoted testimony the witness leaves out of the statement attributed to Mrs. Butcher all reference to Mrs. Hogan keeping the money for herself if anything should happen to Mrs. Butcher, the witness adding, "that is exactly what she said while I was standing there." The last statement of the witness was, "get my money and keep it for her from now on." The natural interpretation of this statement is that "her" referred to Mrs. Butcher, otherwise the language would have been "get my money and keep it for herself from now on." Are we authorized to change language which is clear in order to reconcile it with other testimony of the witness and of what significance is the witnesses' omission to add to her testimony on re-direct examination the statement made on direct examination, "you keep it for yourself, if anything was to happen to her," and after testifying on re-direct examination, "get my money and keep it," what force are we to give her statement, "that is exactly what she said while I was standing there," thus apparently excluding the statement, "you keep it for yourself, if anything was to happen to her"?

We return to a narration of events following the time when this alleged conversation with Mrs. Butcher is said to have occurred. The proof in that connection, shows that Mrs. Hogan, sometime before the arrival of Dr. Copenhaver, went upstairs in the Butcher residence.

She says she went to get the money and also to get clothing for Mrs. Butcher. She found the money wrapped in Mrs. Butcher's corset on the mantel where, apparently, it had been placed after discovery by one of the nieces, Miss Lida Bell Gambill. Although Mrs. Hogan was then confronted with a claim by Miss Gambill that the money was hers by gift from Mrs. Butcher made sometime before she was stricken, according to the undisputed evidence and the virtual admission of Mrs. Hogan, she made no claim of a gift and no such claim was put forward until after the death of Mrs. Butcher. On this point, Mrs. Hogan testified that when confronted by the claim of Miss Gambill she merely refused to turn the money over to Miss Gambill and in response to a proposal that the money be divided between Miss Gambill and Mrs. Hogan, she said, ''No, it is going to be kept together intact,'' and that she then, in the presence of the Gambills, counted and recorded the number and amounts of the bills because she ''didn't want the responsibility, I wanted everybody to know what was there.''

As to the relationship of the witness, Mrs. West, to the alleged donee, Martin West testified that his aunt, Mrs. Hogan, was ''like a mother'' to him. He and his wife support Mrs. Hogan's claim while all the nieces oppose it.

In the early case of Sheegog v. Perkins, 63 Tenn. 273, 281, the court said, referring to gifts causa mortis: ''It is said that too much care cannot be taken in insisting on the most convincing evidence in cases of this kind; for these donations do amount to a revocation, pro tanto, of writtten wills and not being subject to the forms prescribed for nuncupative wills, they are certainly of a dangerous nature.''

In Balling v. Manhattan Sav. Bank & Trust Co., 110 Tenn. 288, 75 S. W. 1051, 1053, the opinion quotes from Sheegog v. Perkins, supra, as follows: ''In order to make this gift complete, it must appear absolutely and beyond doubt that the donor intended to part with his dominion over the property. If the intention to give . . . be not clearly made out, it cannot be supported; and if, upon the facts, the matter be enveloped in doubt, that doubt must prevail against the hypothesis of the case.''

The court then went on to observe: ''It is well settled that stronger more cogent, and stringent proof is required to establish a gift causa mortis than a gift inter vivos, because the former donations amount to a revocation pro tanto of written wills, and, not being subject to the forms prescribed for nuncupative wills, are of a dangerous nature, and open the door of fraud and perjury.''

The case of Scott v. Union & Planters' Bank & Trust Co., 123 Tenn. 258, 130 S. W. 757, 767, principally involved a question of delivery of instruments endorsed by the donor and delivered to a son of the donee. The court held that constructive delivery was sufficient, the donor having done all that could do to accomplish delivery. It was held that the gift might be sustained by the testimony of a son of the donee notwithstanding the relationship, there being ''no intrinsic evidence to discredit him.'' The gift was sustained, though the court held that evidence to sustain a gift causa mortis will be scrutinized with care and the proof to sustain the gift must be clear and convincing.

Other cases holding without exception that the evidence must be clear and convincing, include Atchley v. Rimmer, 148 Tenn. 303, 255 S. W. 366, 30 A. L. R. 1481;

Chandler v. Roddy, 163 Tenn. 338, 43 S. W. (2d) 397 (both involving gifts inter vivos); Lenow v. Bank of Commerce & Trust Co., 4 Tenn. App. 218; Nashville Trust Co. v. Williams, 15 Tenn. App. 445; O'Brien v. Waggoner, supra, 20 Tenn. App. 145, 96 S. W. (2d) 170; McAdoo v. Dickson, 23 Tenn. App. 74, 126 S. W. (2d) 393; American National Bank v. Robinson, 27 Tenn. App. 644, 184 S. W. (2d) 393. In Atchley v. Rimmer, supra [148 Tenn. 303, 255 S. W. 369], the court said:

■ "The very reason of the rule which requires the proof to be ample, clear, and convincing because of the opportunity afforded in cases of this sort for fraud, and the facility with which after the death of the donor fraudulent claims of ownership may be founded upon pretended gifts made during the lifetime of the donor, precludes the acceptance by the court of the statements of interested parties alone to establish the gift. We conclude, therefore, that there must be other testimony than that of the beneficiaries of the gift to establish it."

"In some cases it has been held that testimony of relatives of claimant, *when clear and unequivocal*, may be sufficient to establish a gift (causa mortis), but in other cases testimony of relatives of claimant or other interested persons has been held to be insufficient." 38 C. J. S., Gifts Sec. 118b . (Italics ours.)

■ Where the law, as a matter of public policy, requires clear and convincing evidence or clear and unequivocal evidence of a fact and when, as in this case, the sufficiency of the evidence to meet the requirements of the rule does not depend upon resolving a conflict between it and other evidence, the question is one for the determination of the court. The trial judge, in such a case, must find some clear, cogent and convincing evidence

to justify a submission of the case to the jury. Wolfe v. Williams, 1 Tenn. App. 441; Warner v. Maroney, 16 Tenn. App. 78, 66 S. W. (2d) 244; Hammer v. American United Life Insurance Co., 24 Tenn. App. 119, 120, 141 S. W. (2d) 501.

In Napier v. Stone et al., 21 Tenn. App. 626, 114 S. W. (2d) 57, the bill was filed to reform notes and mortgages, requiring evidence of a clear and convincing nature. It was held that evidence offered for the complainant which was full of contradictions was not of that character and the suit was dismissed.

█ █ We are unable to escape the conclusion, after careful consideration, that the testimony of Mrs. West is equivocal in nature and, because of self-contradictions of the witness, it is not sufficiently clear and convincing to sustain a gift causa mortis, especially in view of the close relationship between the husband of the witness and the donee, coupled with what we deem the significant circumstances that Mrs. Hogan when confronted with an adverse claim made no claim to the money and waited until after the death of Mrs. Butcher to assert her claim.

It is not necessary to hold that Mrs. West's testimony amounts to no proof at all under De Grafenreid v. Nashville Railway etc. Co., 162 Tenn. 558, 39 S. W. (2d) 274, and Johnston v. Cincinnati etc. Railway Co., 146 Tenn. 135, 240 S. W. 429, holding that when a witness both affirms and denies a proposition, without explanation, the fact as to which he testifies remains unproven. We hold, merely, that the testimony of the witness in this case is so contradictory and unequivocal that it does not, in the absence of some explanation from the witness, constitute clear, convincing and equivocal evidence within the meaning of the rule. It is unnecessary to review

the evidence at the second trial. The decree is reversed and a decree will be rendered here for complainant. Costs will be taxed accordingly.